**Jimmy Randolph STUDER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1077–88.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 21, 1990.

264

B.W. Cruce, Jr., Mesquite, for appellant.

John Vance, Dist. Atty., and Patricia Poppoff Noble, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before the court en banc.

OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

This case presents us with our first opportunity to interpret the 1985 amendments to Art. 1.14, V.A.C.C.P., and Art. V, § 12, Tex.Const., concerning defects in charging instruments.

Appellant was charged by information with the misdemeanor offense of indecent exposure, alleged to have been committed on May 7, 1987. V.T.C.A. Penal Code § 21.08. He was found guilty in a bench trial, upon his plea of nolo contendere, and the trial judge assessed punishment at six months confinement in the county jail, probated. On direct appeal to the court of appeals, appellant raised one point of error contending the information upon which he was convicted was fatally defective. This

contention had not been raised in the trial court. The court of appeals affirmed appellant's conviction. *Studer v. State,* 757 S.W.2d 107 (Tex.App.—Dallas 1988). We granted appellant's petition for discretionary review to consider whether the court of appeals "erred in holding that the defect in the information was not a fundamental defect that can be raised for the first time on appeal." We will affirm the judgment of the court of appeals.

As noted, appellant was charged with and convicted of indecent exposure, which offense is defined in the Penal Code, section 21.08, as:

A person commits an offense if he exposes his anus or any part of his genitals with intent to arouse or gratify the sexual desire of any person, and he is reckless about whether another is present who will be offended or alarmed by his act.

Appellant argued before the court of appeals and also argues here that since the information failed to allege the act or acts relied upon to constitute recklessness in compliance with Art. 21.15, V.A.C.C.P., the information failed to confer jurisdiction on the trial court.

Article 21.15 provides:

Whenever recklessness or criminal negligence enters into or is a part or element of any offense, or it is charged that the accused acted recklessly or with criminal negligence in the commission of an offense, the complaint, information, or indictment in order to be sufficient in any such case must allege, with reasonable certainty, the act or acts relied upon to constitute recklessness or criminal negligence, and in no event shall it be sufficient to allege merely that the accused, in committing the offense, acted recklessly or with criminal negligence.

The information in this cause charged, in pertinent part, that appellant:

did unlawfully then and there intentionally and knowingly expose his genitals to R.E. Bishop, hereinafter called complainant, with intent to arouse and gratify the sexual desire of the said [appellant], and the [appellant] acted recklessly and in conscious disregard of whether another person was present who would be offended and alarmed by such act ...

The court of appeals agreed with appellant that the information was defective for failing to "allege, with reasonable certainty, the act or acts relied upon to constitute recklessness" and cited *Gengnagel v. State,* 748 S.W.2d 227 (Tex.Cr.App.1988).[1] *Studer,* 757 S.W.2d at 109. The court held, however, that because of the amendments to Art. 1.14, V.A.C.C.P, and Art. V, § 12, Tex.Const., the defect in the information was of a nonjurisdictional nature and was therefore waived by appellant's plea of nolo contendere. *Id.* at 111. See Art. 44.02, V.A.C.C.P.; Tex.R.App.Proc. 40(b)(1) and *Helms v. State,* 484 S.W.2d 925 (Tex. Cr.App.1972) (where plea of guilty is voluntarily and understandingly made, all nonjurisdictional defects are waived).

Article V, § 12(b) of the constitution provides:

An indictment is a written instrument presented to a court by a grand jury charging a person with the commission of an offense. An information is a written instrument presented to a court by an attorney for the State charging a person with the commission of an offense. The practice and procedures relating to the use of indictments and informations, including their contents, amendment, sufficiency, and requisites, are as provided by law. The presentment of an indictment or information to a court invests the court with jurisdiction of the cause.[2]

The pertinent portion of Art. 1.14 provides:

(b) If the defendant does not object to a defect, error, or irregularity of *form or*

---

**1.** In *Gengnagel,* the appellant had also been convicted in Dallas for indecent exposure. We stated there that recklessness was an element of indecent exposure and the allegation of acts constituting recklessness was necessary for a valid charging instrument. *Id.* at 229. We held the information was fundamentally defective for failing to make such allegations, and we affirmed the court of appeals' dismissal of the information. *Id.* at 230.

**2.** Before amendment in 1985, Art. V, § 12 provided:

*substance* in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding. Nothing in this article prohibits a trial court from requiring that an objection to an indictment or information be made at an earlier time in compliance with Article 28.01 [V.A.C.C.P.].[3] (emphasis supplied).

The pivotal issue we must first resolve before specifically addressing appellant's ground for review is what is meant by the terms "indictment" and "information" under the amendment to Art. V, § 12, of the Texas Constitution and newly enacted Art.

1.14(b), V.A.C.C.P. Does the wording: "An indictment or information is a written instrument ... charging a person with the commission of an offense" mean it is an instrument that *alleges all the constituent elements of an offense* or something else (specifically something less). The disposition of this ground for review depends on whether an instrument which lacks allegations of acts constituting recklessness suffers a defect of form or substance but is still an "information", or whether because it fails to allege those acts, and therefore fails to allege an element of the offense of indecent exposure, it is therefore not an "information".[4]

For more than a century cases have come from this Court holding that a defect

---

All judges of courts of this State, by virtue of their office, be conservators of the peace throughout the State. The style of all writs and process shall be, "The State of Texas." All prosecutions shall be carried on in the name and by authority of the State of Texas, and shall conclude: "Against the peace and dignity of the State."

SJR 16 provided for the amendment to Art. V, § 12, of the constitution. The description of the proposed amendment which appeared on the ballot was: "[t]he constitutional amendment relating to the manner in which a person is charged with a criminal offense and to certain requirements applicable to state writs and processes."

3. SB 169 was the implementing legislation for the constitutional amendment, and it provided for Art. 1.14(b), as well as Art. 28.10 (see text of same, infra). The provisions of the amendatory act applying to Art. 1.14 state the change in law takes effect December 1, 1985, only if the constitutional amendment to Art. V, § 12 is approved by the voters. The amendment to Art. V, § 12 was approved by the voters on November 5, 1985. The change in Art. 1.14 applies only to an indictment or information presented to the court on or after the effective date of the amendatory act. Acts 1985, 69th Leg., ch. 577, § 1.

4. The courts of appeals are obviously split on this issue. See for instance *Shaw v. State*, 728 S.W.2d 889 (Tex.App.—Houston [1st] 1987) (Appellant convicted of involuntary manslaughter. Appellant contended the indictment was fundamentally defective for failure to allege his intoxication was voluntary because, he argued, voluntary intoxication is an element of the offense, and an indictment which did not allege all the elements of an offense is fundamentally defective. The court of appeals held there is no fundamental error in indictments presented af-

ter December 1, 1985 (effective date of amendments to Art. 1.14 and Art. V, sec. 12)); *Vela v. State*, 776 S.W.2d 721 (Tex.App.—Corpus Christi 1989), *reh'g denied* (Appellant was convicted of soliciting drinks. On appeal she argued the trial court was without jurisdiction to try her case because the information was fundamentally defective for failing to allege that the person for whom she allegedly solicited a drink was an employee of the bar. Appellant did not raise this issue in her pre-trial motion to quash. The court of appeals held appellant waived her right to object to defect on appeal under Art. 1.14(b), and also stated there can be no fundamental error in charging instruments under Art. 1.14(b)); *Mason v. State*, 740 S.W.2d 517 (Tex. App.—Houston [1st] 1987), *PDR ref'd.* (appellant was convicted of aggravated sexual assault. Misjoinder was the issue in this case, but the court of appeals commented in dicta that Art. 1.14(b) and Art. V, sec. 12 abolished the doctrine of fundamental error in indictments). BUT COMPARE *Murk v. State*, 775 S.W.2d 415 (Tex.App.—Dallas 1989), *PDR granted*, and cases cited therein (Appellant convicted of public lewdness. At trial, the State amended the information by deleting the words "with the intent to arouse and gratify the sexual desire of said defendant." On appeal, appellant contended the information was fundamentally defective for failure to allege an offense because the culpable mental state was lacking which is an essential element of offense. The court of appeals agreed with appellant and rejected the State's waiver argument under Art. 1.14(b). The court stated that an instrument which does not contain every essential element of an offense does not charge the commission of an offense and therefore is not a charging instrument under the constitution and does not invest the trial court with jurisdiction. Failure to object pre-trial to such defect is not fatal to appeal).

in the "substance" of a charging instrument may be raised for the first time on appeal for it renders the charging instrument "fundamentally defective." See *Ex parte Pruitt*, 610 S.W.2d 782, 785 (Tex.Cr. App.1981), *Pospishel v. State*, 95 Tex.Cr.R. 625, 255 S.W. 738 (1923), *White v. State*, 1 Tex.Cr.R. 211, 215 (Ct.App.1876). We have found "substance" defects in a myriad of cases.[5] Moreover, since 1965,[6] Art. 27.08, V.A.C.C.P., has statutorily defined substance defects in an indictment or information. Art. 27.08 in its entirety states:

## EXCEPTION TO SUBSTANCE OF INDICTMENT

There is no exception to the substance of an indictment or information except:

1. That it does not appear therefrom that an offense against the law was committed by the defendant;

2. That it appears from the face thereof that a prosecution for the offense is barred by a lapse of time, or that the offense was committed after the finding of the indictment;

3. That it contains matter which is a legal defense or bar to the prosecution; and

4. That it shows upon its face that the court trying the case has no jurisdiction thereof.[7]

The changes in the Code of Criminal Procedure which occurred simultaneously with the passage of the constitutional amendment, however, did not encompass Art. 27.-08 and, therefore, did not change the definition or our understanding of what constitutes a substance exception.[8]

A substance defect was considered "fundamental error" since a charging instrument with such a defect failed to confer jurisdiction upon the trial court, and any conviction had upon that instrument was therefore void. Also apparent from the caselaw is that this Court has used the terms "substance defect", "fundamental error", and "fatally defective" interchangeably when addressing errors in charging instruments which led to void convictions.

■ A consolidation of the holdings from this review of caselaw and Art. 27.08 reveals, germane to the discussion at hand,

---

**5.** *Gengnagel*, 748 S.W.2d 227 (appellant challenged substance of indecent exposure information where instrument failed to allege acts constituting recklessness); *Brown v. State*, 558 S.W.2d 471 (Tex.Cr.App.1977) (public lewdness information fundamentally defective for failure to allege acts relied upon to constitute recklessness); *American Plant Food Corp. v. State*, 508 S.W.2d 598 (Tex.Cr.App.1974) (omission of conclusion from indictment is fatal defect in substance) [Note: The constitutional requirement of a commencement and conclusion for all prosecutions has been deleted and is now a statutory requirement under Chapter 21 of the Code of Criminal Procedure.]; *Ex parte Luddington*, 614 S.W.2d 427 (Tex.Cr.App.1981) (failure to allege essential element of robbery is defect of substance and fundamental error which may be raised at any time); *Lindsay v. State*, 588 S.W.2d 570, fn. 2 (Tex.Cr.App.1979) (defect of substance goes to failure of indictment to allege an offense).

In contrast, a defect of form may be classified as merely a "notice" problem. See *Bynum v. State*, 767 S.W.2d 769 (Tex.Cr.App.1989) (indictment for misapplication of fiduciary property failing to allege facts essential to give notice was defective as to form). If a charging instrument alleges an offense, then any objection to the instrument would be to the form rather than the substance, and therefore not a fundamental defect. *Green v. State*, 578 S.W.2d 411 (Tex.Cr.

App.1979), citing *American Plant Food Corp.*, 508 S.W.2d 598. See also *Janecka v. State*, 739 S.W.2d 813 (Tex.Cr.App.1987) (defendant raises defect of form when he requests additional factual information upon which to prepare defense). Thus, an alleged form defect in a charging instrument could not be raised for the first time on appeal or on writ of habeas corpus, but rather had to be raised by a timely filed motion to quash or the alleged error was waived. *Graham v. State*, 657 S.W.2d 99 (Tex.Cr.App.1983); *Daniels v. State*, 754 S.W.2d 214 (Tex.Cr.App. 1988).

**6.** Former Art. 511 of the 1925 Code of Criminal Procedure was carried over verbatim as Art. 27.08 in the 1965 code.

**7.** Category 4 is a type of substance defect that is separate and distinct from one that, before the amendments to Art. V, § 12, deprived the trial court of jurisdiction of the case for failure to allege all elements of an offense. This category applies to situations where, *e.g.*, an information alleges a felony offense and the case is in a county court, or vice-versa.

**8.** The term "exception" as used in Arts. 27.08 and 27.09, V.A.C.C.P. encompasses any "defect, error, or irregularity" in an indictment as used in Art. 1.14(b).

that a substance defect is, among other things, a failure to allege an element of an offense in the charging instrument. Stated conversely, a failure to allege an element of an offense in an indictment or information is a defect of substance. The amendments to Art. 1.14, V.A.C.C.P., and Art. V, § 12 did not, on their face, change this long-standing precedent.

The amendment to Art. V, § 12 also gave the legislature the authority to regulate the practices and procedures relating to indictments and informations. As stated previously, Art. V, § 12 provides in pertinent part:

> The practice and procedures relating to the use of indictments and information, including their contents, amendment, sufficiency, and requisites, are as provided by law.[9]

Both before and contemporaneous with the 1985 amendment to Art. V § 12, the legislature promulgated such practice and procedures in the Code of Criminal Procedure. The amendment to Art. V, § 12 also addressed the obtainment of jurisdiction by the trial court. The section now states that jurisdiction is conferred on the trial court by the *presentment* of an indictment or information.

■ When Art. V, § 12 is read in conjunction with the code provisions regulating the practices and procedures governing charging instruments, it is clear the amendment to Art. 1.14 did not change what constitutes a substance defect, but rather only its effect. The change in Art. 1.14(b) requires, among other things, that substance exceptions be raised pre-trial or otherwise the accused has forfeited his right to raise the objection on appeal or by collateral attack. If omitting an element from an indictment is still a defect of substance in an indictment, it naturally follows that

the indictment is still an indictment despite the omission of that element.

Analyses of SJR 16 and SB 169 from certain official legislative reporting entities support the interpretation that in order to be an indictment or information, the charging instrument need not necessarily allege every element of the offense charged. These analyses have weight because they represent *to the voting public* the legislative view of what these laws mean. Presumably the public will then educate itself, or be educated by voter information entities such as local newspapers, the League of Women Voters, etc. Thus educated, the public can be said to have voted informatively on November 5, 1985, when the constitutional amendment in question was on the ballot.

An analysis from the House Study Group Special Legislative Report # 120, dated August 23, 1985, attached as appendix A, contains the following under the arguments supporting passage of the amendment:

> Under SJR 16, flaws like these [missing element] would no longer be treated as "fundamental defects" compelling the Court of Criminal Appeals to reverse convictions. Under the "fundamental defect" doctrine, the Court has ruled that every essential element of the Penal Code offense being alleged must be stated in the written charges with precision, in terms drawn from the Penal Code itself and from the cases interpreting the code ... in order for the trial court even to have jurisdiction to hear the case.

> \*   \*   \*   \*   \*   \*

> Certainly, as a matter of fundamental due process, defendants deserve notice of the charges against them. But there is

---

9. A review of the Code of Criminal Procedure reveals comparable provisions for the requisites of a sufficient indictment or information. Arts. 21.01 and 21.21, V.A.C.C.P., respectively. The code then specifically defines what constitutes an exception to the substance of an indictment, Art. 27.08, and an exception to the form of an indictment, Art. 27.09. Also see Art. 21.23 ("The rules with respect to allegations in an indictment and the certainty required apply also to an

information.") Article 28.01, § 1(4), provides the avenue by which to test the sufficiency of a charging instrument against the code requisites. Under Art. 28.01, the defendant may have a pre-trial hearing to determine the exceptions to the form or substance of the indictment or information. If an exception is sustained, the charging instrument may be amended as permitted by Art. 28.10.

no reason why detailed notice must necessarily be given in the indictment itself.

\*    \*    \*    \*    \*    \*

[In the context of the undoing of the "Common Sense Indictment Act"] ... the Court of Criminal Appeals said that a grand jury indictment, as the term was used in the constitution, clearly meant a statement of all the essential elements ... [thus passage of the constitutional amendment is necessary to change things].

The report's argument against passage conceded that "[t]he implementing legislation for this amendment would require defendants to object to all defects in the charge prior to trial." Under "NOTES" the report flatly states that "the bill would require defendants to object to defects in an indictment or information or else waive the right to object to any defect on appeal." Nowhere in the analysis is there even a hint that the phrase in Art. V, § 12, "An indictment is a written instrument presented to a court by a grand jury charging a person with the commission of an offense" means that if an element of an offense is omitted then the indictment is not an indictment for purposes of the constitution and laws up for adoption in 1985. House Study Group Special Legislative Report # 120, dated August 23, 1985.

The report from the Texas Legislative Council, attached as appendix B and which also analyzes for the public proposed constitutional amendments, notes that SJR 16 would institute three basic changes in charging instrument law: the constitutional requirement of a commencement and conclusion in the charging instrument is deleted (but now required under Chapter 21, V.A.C.C.P.); the legislature may regulate charging instrument practice; and, most significantly, the presentment of a charging instrument invests the trial court with jurisdiction. The commentary accompanying this last change states:

This change in the law would have a significant impact on the line of cases holding that a fundamental error in a charging instrument deprives the court of jurisdiction of the case. Presumably,

the law developed in those cases will no longer be applicable.

The legislative council report also clearly points out that under then current law the omission of an element of the offense constitutes a fundamental defect. It goes on to state that SB 169 contains a change authorized by the proposed constitutional amendment, to wit: a defect in a charging instrument must be raised before trial or the defendant's right to object is waived. The only potential for relief suggested in the report, via due process, would arise only if the defendant can show that he was "mislead or otherwise prejudiced by a defect in a charging instrument". Again, nowhere in the analysis is there even a hint that the phrase in Art. V, § 12, "An indictment is a written instrument presented to a court by a grand jury charging a person with the commission of an offense" means that if an element of an offense is omitted then the indictment is not an indictment for purposes of the constitution and laws up for adoption in 1985. In fact, if such a defect rendered an indictment not an indictment, then the "presentment of an indictment ... to a court invests the court with jurisdiction" language would also not apply to an instrument that was missing an element of the charged offense. Clearly the discussion in the report under "BACK-GROUND" refutes this notion. Under the heading "ARGUMENTS" the discussions pro and con make it clear that the amendment and supporting legislation that would go into effect upon passage of the amendment "[e]liminates a defendant's right to challenge a conviction after trial on the basis of a defective charging instrument." (Note that the phrase charging instrument, not indictment, is used.) *Analyses of Proposed Constitutional Amendments*, Texas Legislative Council Information Report, No. 85–3, August 1985.

The floor debates over SB 169 and SJR 16 add further light. In the House floor debate on May 24, 1985, Rep. Dan Morales explained the purpose of SB 169 (now Art. 1.14 and Art. 28.10, V.A.C.C.P.) to the entire House in response to questions from Representative Larry Evans, as follows:

Morales:

Yeah, Larry, as you can see on page two of this legislation: Any defect with regard to form or substance in a criminal indictment has got to be raised prior to the trial on the merits. *So basically, what the legislation would do is simply require that the defendant raise any sort of technical defect with regard to an indictment prior to the trial to preclude a situation where we go through the entire trial, get a verdict, a sentence, an ultimate conclusion to that trial, and then have the defect raised, resulting in a reversal.*

Evans:

*Then, with regard to defects relating to substance, what kind of defects are we talking about there?*

Morales:

*Any and all.*

Evans:

So if you said it was murder, and it really was a theft, then would that apply to that situation?

Morales:

In that circumstance, at the request of the defendant, the court may give the defendant ten days to respond. That's on page two, Article 28.10.

Evans:

And with regard to form, what kind of defects are we talking about there?

Morales:

Likewise. Any sort of wrong date, misplaced comma, misspelling, things of that nature.

\* \* \* \* \* \*

Evans:

Well, unlike a prosecutor, who is well versed in the area of criminal law, the defendant is not as well versed. Wouldn't you agree with that, Mr. Morales?

Morales:

No, not necessarily. But Larry, even if that is the case, ten days is what the defendant has to prepare for trial. *There is nothing unreasonable in requiring the defendant to raise that objection prior to the trial, rather than*

*allowing the defendant to hide behind that defect to force the state to go through the facade of a trial before a jury or a judge, and then to raise that defect only after a verdict has been reached.*

Emphasis supplied. In the Senate floor debate on March 21, 1985, Senator Ike Harris summarized SB 169 and SJR 16 this way:

Harris:

Thank you, Mr. President. Member, SB169 and on your agenda today, SJR16, I move to suspend all necessary rules to take up consideration of 169. *What this basically does … it's a bill that deals with that problem that has plagued the criminal justice system and the Court of Criminal Appeals over a number of years, that involves a defective indictment which a defense goes to trial upon, makes no objection, then raises on appeal for the first time, then the court reverses, based upon that defect in the indictment and the lower court has never had the opportunity to rule upon that question.* There are a number of cases that have been reversed based on those technicalities. We would move to suspend the rules at this time. I move to suspend, Mr. President.

\* \* \* \* \* \*

Harris:

Mr. President, I move to suspend all necessary rules to take up and consider SJR16. *SJR16 is a constitutional amendment that goes with the enabling statute that we've just passed that provides for the court to have jurisdiction to make amendments provided the defendant makes the proper objection and provided it meets the rules as set out in the statute.* I would move for suspension of the necessary rules at this time, Mr. President.

Emphasis supplied.

Clearly both the House and Senate believed that all defects in a charging instrument were waived if not raised by a defendant before trial. Clearly the perceived evil they were correcting was the raising of indictment defects for the first time after a

trial and conviction and the subsequent reversal of that conviction because of that defect. To say that an indictment that does not contain an element of an offense is not an "indictment" for purposes of SB 169, would be to completely ignore the entirety of Govt.Code Sec. 311.023,[10] as well as to thwart the intent and the will of the legislature and, presumably, the people who passed Art. V, § 12.

Finally, we note that our view of the picture that was painted by the promulgators of the 1985 changes to our charging instrument law would not be complete without an analysis of the rest of the legislative package that was SB 169. As pointed out in footnote 3, SB 169 also included amendments to Art. 28.10, V.A.C.C.P. While we are not presented with an issue under that article in this petition, the language of the article is instructive as to what the legislature intended an indictment or information to be under the amendments. Article 28.10 provides in entirety:

Art. 28.10 Amendment of Indictment or Information

(a) After notice to the defendant, a matter of form or substance in an indictment of information may be amended at any time before the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

(b) A matter of form or substance in an indictment or information may also be amended after the trial on the merits commences if the defendant does not object.

(c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

By its express terms, Art. 28.10 clearly allows for the amendment of any matter of form or substance in an indictment or information. Section (c), by allowing for the pleading of an additional or different offense under certain circumstances, contemplates the amendment of an indictment or information to add (or delete) an element of an offense and provides further support for our conclusion that an indictment or information need not plead each constituent element of an offense to "charge a person with the commission of an offense."

■ Under the foregoing analyses, we conclude that since SB 169 and SJR 16 were passed by the legislature as a package (see footnotes 2 and 3 *infra*), and an error in substance encompasses the omission of an element, the inclusion in Art. 1.14(b) of the language mandating that defects of substance be waived if not raised pre-trial expresses a clear and plain meaning, which was explained to and ratified by the people of Texas, that an indictment (or information) is still an indictment (or information), at least as contemplated by Art. V, § 12, though it be flawed by matters of substance such as the absence of an element.[11]

---

10. Sec. 311.023 *Statute Construction Aids* provides: "In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the:

(1) object sought to be attained;

(2) circumstances under which the statute was enacted;

(3) legislative history;

(4) common law or former statutory provisions, including laws on the same or similar subjects;

(5) consequences of a particular construction;

(6) administrative construction of the statute; and

(7) title (caption), preamble, and emergency provision."

11. The express language of Art. 1.14(b) requires a defendant to raise pre-trial any defects, errors, or irregularities of *substance* in the charging instrument. Failing to do that, the defendant waives and forfeits the right to complain of the alleged substance defect, error, or irregularity on appeal or in any postconviction proceeding. Thus, the substance defect, etc. may not be raised for the first time on appeal or in a writ as we have held in the past. In other words, the substance defect is no longer considered to be one of a "fundamental" nature, in the sense that fundamental meant no jurisdiction was conferred, and the conviction on such a charging instrument would not be reversed for a lack of jurisdiction in the trial court. This reasoning stands independently of the last sentence of Art.

In conclusion then, the language in Art. V, § 12, "charging a person with the commission of an offense", does not mean, under this analysis, that each element of the offense must be alleged in order to have an indictment or information as contemplated by Art. V, § 12.

Going further, the case referred to in the quoted portion of the House Study Group analysis, supra (opinion page 269), was most certainly *Williams v. The State,* 12 Tex.App. 395 (1882) which declared the form suggested in the "common sense indictment" act, which form omitted numerous elements of offenses, repugnant to the Texas constitution. *Williams* set out the proposition that the constitution required that all the acts and omissions essential to constitute an offense must be alleged in the indictment, and that without allegation of the elements of an offense the indictment is void. The cornerstone of the reasoning in *Williams* was that certain requirements of an indictment arise from the constitution itself. This conclusion stemmed from the inferential requirements of the Texas Bill of Rights, Art. I, Sec. 10 (right to an indictment from a grand jury), *as contemplated by the framers of our constitution at the time of the adoption of the Bill of Rights.* The court stated:

> Our organic law provides that 'no person shall be held to answer for a criminal offense unless on indictment of a grand jury, except in cases in which the punishment is by fine, or imprisonment otherwise than in the penitentiary,' etc. ... We think it clear from these authorities that the meaning of the word 'indictment' in the Bill of Rights requires that it should state the essential acts or omissions which constitute the offense with which the party is accused. It must charge explicitly all that is essential to constitute the offense, and cannot be aided by intendments. A statement of a legal result, a conclusion of law, will not

be sufficient; the facts constituting the crime must be set forth, that the conclusion of law may be arrived at from the facts so stated.

*Williams,* supra at 398, 400.

We are convinced by the previously described events of 1985 that the original intent of the framers has been modified by the people and supplanted by their intent that requirements of an indictment are not mandated by the constitution, but rather only by statute.

As previously set out, Article V, § 12(b) of the constitution as amended in 1985 provides in part:

> The practice and procedures relating to the use of indictments and informations, including their contents, amendment, sufficiency, and requisites, are as provided by law.

We believe, from the events heretofore discussed, that this language changed the premise of *Williams.* We believe that the requisites of an indictment stem from statutory law alone now. The inferential requirements of Art. I, Sec. 10 as construed in *Williams* (to require that all the elements of an offense be in an indictment) have, by the will of the people, been abolished.[12]

In sum, the wording of Article V, § 12(b), that provides "[a]n indictment is a written instrument presented to a court by a grand jury charging a person with the commission of an offense[;] [a]n information is a written instrument presented to a court by an attorney for the State charging a person with the commission of an offense", abolishes the former prerequisites to which the referred to charging instruments must adhere, lest they fail as charging instruments, at least from the standpoint of Art. V, Sec. 12.

With this analysis in mind, we may now address appellant's ground for review that the court of appeals erred in holding the information was not fundamentally defec-

V, § 12 which states jurisdiction is conferred upon presentment and which further supports the notion that a substance defect will not deprive a court of jurisdiction.

**12.** The right to indictment by a grand jury, however, has not been abolished; nor, of

course, have the statutory requisites of an indictment or information. See Art. I, Sec. 10, Tex.Const.; Arts. 21.02 and 21.21, V.A.C.C.P., and generally Ch. 21, V.A.C.C.P.

tive for failing to allege the acts constituting recklessness in compliance with Art. 21.15, V.A.C.C.P. The court of appeals held that the information was technically defective for noncompliance with Art. 21.-15, based on our holding in *Gengnagel*, 748 S.W.2d 227, but it was sufficient to charge appellant with the elements of indecent exposure under Penal Code § 21.08 and because of that fact it was an "information" sufficient to invest the trial court with jurisdiction. Since the defect was one of substance, the court of appeals held appellant waived the defect by his plea of nolo contendere.

■ The result reached by the court of appeals is correct. Under the foregoing construction of Art. V, § 12 and Art. 1.14(b) the error is waived. The information in this case, which is set out on page 265 *infra*, fails to allege the acts relied upon by the State to constitute recklessness, a defect which we held in *Gengnagel* was one of substance. Although the information, attached at Appendix C, is substantively defective, it was, on its face, an information as contemplated by Art. V, § 12. Once presented to the trial court "by an attorney for the State", the trial court obtained jurisdiction of the cause. Subsequently, it was incumbent upon appellant under Art. 1.14(b) to lodge an objection to this substantive defect. Since appellant failed to make any pre-trial objection to the substance error in the information, it is waived. See *Helms*, 484 S.W.2d 925.

The judgment of the court of appeals is affirmed.

McCORMICK, P.J., concurs in the result.

## APPENDIX A

**STEERING COMMITTEE:**

| | | |
|---|---|---|
| Bruce Gibson | Juan Hinojosa | Al Price |
| Ernestine Glossbrenner | Jim McWilliams | Jim Rudd |
| Anita Hill | Bill Messer | Ed Watson |

# HOUSE STUDY GROUP special legislative
# report—

NOV 2 1 1985

August 23, 1985                                            No. 120

### 1985 Constitutional Amendments

Fourteen proposed constitutional amendments will be submitted to Texas voters on Nov. 5, 1985. The Legislature approved all of them during the 1985 regular session. The proposed amendments are analyzed here in the order in which they will appear on the November ballot.

Ernestine Glossbrenner
Chair

HOUSE
STUDY
GROUP Constitutional Amendment Analysis      Amendment No. 11   (SJR 16)

SUBJECT:        Requirements for written criminal charges

BACKGROUND:     Art. 1, sec. 10, of the Texas Constitution guarantees
                anyone accused of a criminal offense the right to know
                the nature and cause of the accusation and to have a
                copy of the accusation.  This provision also says no
                person can be tried for a felony offense unless
                indicted by a grand jury.

                Art. 5, sec. 12, provides that all prosecutions must be
                carried out "in the name and by authority of the State
                of Texas" and must conclude with the words "Against the
                peace and dignity of the State."

DIGEST:         SJR 16 would amend Art. 5, sec. 12, to allow the
                Legislature to provide by law for practices and
                procedures concerning the use of indictments and
                informations, including their contents, amendment,
                sufficiency, and requisites.  An indictment would be
                constitutionally defined as a written instrument
                presented by a grand jury charging a person with
                commission of an offense.  An information would be
                constitutionally defined as a written instrument
                presented by an attorney for the state charging a
                person with commission of an offense.  Presenting an
                indictment or information to a court would suffice to
                give the court jurisdiction over a criminal case.

                The ballot language will read:  "The constitutional
                amendment relating to the manner in which a person is
                charged with a criminal offense and to certain
                requirements applicable to state writs and processes."

SUPPORTERS      SJR 16 would eliminate obsolete language from
SAY:            the Constitution and would let the Legislature set
                reasonable standards governing the process of charging
                people with crime.  The proposed amendment would
                protect the rights of defendants without subjecting
                prosecutors to unnecessary and unreasonable
                restrictions.  The court cases defining in detail the
                requisites of a proper indictment or information are so
                confusing, conflicting, and hypertechnical that it is
                time to wipe the slate clean and start over.  Rules
                originally devised to protect the accused have evolved
                into a trap for prosecutors while providing only
                illusory benefits for defendants.

                Caught in a bind by accumulated precedents, the courts
                have been reversing convictions based on minute

36

SUPPORTERS
SAY:(cont.)

technicalities that no prosecutor or grand jury can anticipate. Some of the cases have become notorious. A murder conviction of a man who drowned his wife was thrown out because the indictment did not specify the liquid in which she was drowned. A conviction for possession of cocaine was reversed because the indictment failed to specify that the substance was "the derivative of coca leaves."

Under SJR 16, flaws like these would no longer be treated as "fundamental defects" compelling the Court of Criminal Appeals to reverse convictions. Under the "fundamental defect" doctrine, the court has ruled that every essential element of the Penal Code offense being alleged must be stated in the written charges with precision, in terms drawn from the Penal Code itself and from the cases interpreting the code (as in the "coca leaves" case), in order for the trial court even to have jurisdiction to hear the case. Thus the doctrine means that finding a formal defect in the indictment in effect nullifies the entire legal proceeding that produced the defendant's conviction.

This doctrine is strict to the point of perversity. Certainly, as a matter of fundamental due process, defendants deserve notice of the charges against them. But there is no reason why detailed notice must necessarily be given in the indictment itself. The Legislature should have the power to prescribe other adequate methods of pretrial notice of the charges. For example, broader discovery procedures, allowing defendants more pretrial access to the evidence gathered by the prosecution, would give defendants more information than indictments do. A separate "bill of particulars," supplementing the basic charging document, could also be used to give defendants details about the accusation. The Court of Criminal Appeals could be given rulemaking authority to establish further safeguards of defendants' notice rights.

It is only reasonable to expect defendants to object before trial to any defect in the charges. If they do not, they should be deemed to have waived the right to base an appeal on the defect. Defense attorneys should not be able to lie in wait to see if their client will be acquitted before claiming that the proceedings were fundamentally flawed by an error in the charges. New trials on corrected charges are costly and may not even be practical--e.g., witnesses may no longer be available, or prosecutors may have huge case loads of more recent offenses to prosecute.

37

**SUPPORTERS SAY:(cont.)**

Unfortunately, this problem cannot be solved by statute. The Legislature as long ago as 1881, in the "Common Sense Indictment Act," tried to simplify the rules for written charges, in order to prevent legitimate convictions from being overturned simply because the grand jury failed to dot every "i" and cross every "t." But the Court of Criminal Appeals said that a grand-jury indictment, as the term was used in the Constitution, clearly meant a statement of all the essential elements of the offense, and that it was for the court, not the Legislature, to decide what sufficed to meet this definition.

SJR 16 merely gives the Legislature long-overdue authority to implement the constitutional requirement of written charges in common-sense fashion. By stating flatly that the court has jurisdiction once the indictment, however flawed, is presented, SJR 16 would force defendants to examine the indictment closely before trial and make their objections early enough for the state to make needed corrections. Convicted criminals could no longer comb the Penal Code and the precedents for a ritual phrase, omitted or misstated in the indictment, that could serve as a prison-escape clause. And public confidence in the criminal-justice system would be greatly enhanced.

**OPPONENTS SAY:**

SJR 14 would wipe out decades of judicial precedent guaranteeing that prosecutors give people accused of crime sufficient notice of the charge in order to defend themselves. Inadequate notice of the accusation gives the prosecution an unfair advantage, subverting the fundamental principle that defendants are innocent until the prosecution proves them guilty. If an indictment is too broad or vague, it can also threaten the right of an accused not to be placed in double jeopardy--tried twice for the same action.

Defendants must rely on the charge for basic information about the accusation against them. If the Legislature permitted vague, general charges to be filed, then the prosecution could get away with waiting to bring up key allegations until the case came to trial. The courts in a few well-publicized instances have indeed set out quite detailed requirements for indictments, but they have only been seeking to ensure fairness.

The Legislature cannot be depended upon to protect the basic rights of defendants in their unequal contest with the power of the state. Bills to give defendants more pretrial access to evidence and to let the Court

38

**OPPONENTS**
**SAY:(cont.)** of Criminal Appeals establish pretrial-notice rules failed to pass last session, once more indicating the Legislature's lack of concern for the rights of the accused.

Under this amendment, the courts would still end up having to act to protect defendants' rights, starting from scratch in defining how best to provide the notice that is required by due process. The legal uncertainties would be far greater than they are now.

The implementing legislation for this amendment, SB 169, would require defendants to object to all defects in the charge prior to trial. This bill, another demonstration of the Legislature's lack of sympathy for defendants, would give prosecutors a blank check to find a "mistake" in an indictment or information at the last minute, then make significant changes in the charge--e.g., by stating a different time or place of the alleged offense or even alleging an entirely new offense. Defense strategy could be shattered by a last-minute indictment change.

Under current law, the grand jury would have to scrutinize a new, corrected indictment to satisfy itself that probable cause existed to charge the defendant with each element of the crime. The system proposed under SJR 16 would eliminate this safeguard.

Defendants would be expected to know in advance of trial when an error had been made, or else waive the right to protest the error on appeal. But there would be no way for defendants to know before trial that the prosecution's case would vary substantially from the charge in the indictment. Indigent defendants with appointed attorneys already tend to get less adequate representation than other defendants, and this subtle form of discrimination would be compounded by setting another procedural trap for the unwary or inattentive defense lawyer.

Most defense attorneys would probably make a practice of challenging every indictment in every case on grounds of defect, whether they had actually detected an error or not, just to preserve their right to appeal. The result would be a tremendous waste of court time on these pretrial motions.

**NOTES:** SB 169 by Brown, the implementing legislation for SJR 16, will take effect on Dec. 1, 1985, if SJR 16 is approved by the voters. The bill would require defendants to object to defects in an indictment or

NOTES:(cont.)  information prior to trial or else waive the right to object to any defect on appeal.

If the defendant objected to a defect, error, or irregularity of form or substance before the trial date, the charging instrument could be amended before trial, after notice to the defendant. The trial could then proceed. The court would have to allow the defendant (upon request) not less than ten days, or a shorter period if the defendant preferred, to respond to the amended indictment or information. An indictment or information could not be amended over the defendant's objection regarding form or substance if the amended instrument charged the defendant with an additional or different offense or if the substantial rights of the defendant were prejudiced. A matter of form or substance could be amended after the trial began if the defendant did not object.

Analyses of Proposed Constitutional Amendments,
Texas Legislative Council Information Report, No.85-3,
August 1985.

## AMENDMENT NO. 11

Senate Joint Resolution 16, proposing a constitutional amendment relating to the manner in which a person is charged with a criminal offense and to certain requirements applicable to state writs and processes. (SENATE AUTHOR: J. E. (Buster) Brown; HOUSE SPONSOR: Terral Smith)

The proposed amendment of Article V, Section 12, of the Texas Constitution, approved by the 69th Legislature, Regular Session, 1985, eliminates the requirement that all state writs and processes be styled "The State of Texas." It also eliminates the specific requirement that a criminal charge be conducted in the name and by authority of the State of Texas and conclude with the words "Against the peace and dignity of the State."

The amendment also defines "indictment" as a criminal charge presented by a grand jury and "information" as a criminal charge brought by a prosecutor. The amendment then provides that the practice and procedures relating to the use of indictments and informations, including their contents, amendment, sufficiency, and requisites, are as provided by law. The amendment states that the presentment of an indictment or information to a court invests the court with jurisdiction of the cause.

The description of the proposed amendment that will appear on the ballot is as follows: "The constitutional amendment relating to the manner in which a person is charged with a criminal offense and to certain requirements applicable to state writs and processes."

## BACKGROUND

A complex and unique body of law has developed in Texas relating to the procedures and written documents used to institute criminal prosecutions. Under Article I, Section 10, of the Texas Constitution a person accused of felony has the right to have the prosecution initiated by a grand jury indictment. By statute the prosecution of a misdemeanor punishable by confinement in jail is initiated by the prosecutor's filing in court of a document called an information. The indictment or information, commonly referred to as the charging instrument, is the state's primary pleading in a criminal case. It must allege what offense the accused has committed along with several other items, including certain facts relating to the jurisdiction of the court. The case law surrounding charging instruments centers on two primary issues: when is a charging instrument defective, and what is the result of a particular defect?

The courts have classified defects in charging instruments as either fundamental or nonfundamental. Generally, a fundamental defect is one that is so profound that it renders the charging instrument invalid, voiding any conviction obtained as a result of the prosecution based on the charging instrument. A fundamental defect may be raised at any time, even years after trial. The courts have justified this result by reasoning that if the charging instrument contains a fundamental defect, the court never had jurisdiction of the case: thus the entire prosecution was, in effect, illegal and unauthorized. See Brasfield v. State, 600 S.W.2d 288 (Tex. Crim. App. 1980), especially the Opinion on State's Motion for Rehearing, for a recent in-depth discussion of the matter. The courts have held that the failure of a charging instrument to contain either of the constitutionally required phrases "In the name and by authority of the State of Texas" or "Against the peace and dignity of the State" constitutes a fundamental defect. See Jones v. State, 622 S.W.2d 109 (Tex. Crim. App. 1981) and Ex parte Warnell, 606 S.W.2d 923 (Tex. Crim. App. 1980). The omission of an element of the offense also constitutes a fundamental defect. See Ex parte Cannon, 546 S.W.2d 266 (Tex. Crim. App. 1976). A nonfundamental defect may be a minor defect of form, such as a misspelled name, or it may be the failure of the charging instrument to allege an element of the offense with enough specificity. A nonfundamental defect must be raised before trial or the defendant waives his right to complain about it. The existence of a nonfundamental defect in a charging instrument does not void the prosecution if waived; its existence does not deprive the court of jurisdiction as does a fundamental defect.

It has long been established that a substantive defect in an indictment cannot be amended by the prosecutor because the grand jury, not the prosecutor, is the sole entity authorized under Article I, Section 10, of the Texas Constitution to initiate felony charges. In addition, Article 28.10 of the Code of Criminal Procedure currently provides that only the form, not the substance, of an indictment or information may be amended.

The constitutional amendment proposed by Senate Joint Resolution 16 would make several basic changes in the law governing indictments and informations. It would eliminate the constitutional requirements that charging instruments contain the specific phrases "In the name and by the authority of the State of Texas" and "Against the peace and dignity of the State." Those phrases would continue to be required by statute. See Articles 21.02 and 21.21, Code of Criminal Procedure. However, the legislature would be authorized to alter or eliminate them or otherwise regulate their use and significance.

The amendment would significantly alter current practice involving charging instruments by providing that the legislature or other body to whom the legislature delegates its authority may by law regulate charging instrument practice. This change would in effect overrule the line of cases providing that the state constitutional right to an indictment includes the specific indictment practices in use when the constitution was adopted. In particular, the amendment would probably make obsolete the case law holding that the substantive provisions of an indictment may not be amended.

Finally, the proposed constitutional amendment would provide that a court has jurisdiction of a case when the charging instrument is presented to it. This change in the law would have a significant impact on the line of cases holding that a fundamental error in a charging instrument deprives the court of jurisdiction of the case. Presumably, the law developed in those cases will no longer be applicable. It is possible, however, that the courts will still find jurisdictional problems in certain defective charging instruments.

The 69th Legislature, Regular Session, 1985, also passed Senate Bill 169, contingent on the adoption of the constitutional amendment proposed by Senate Joint Resolution 16. Senate Bill 169 would implement two changes in the statutes relating to charging instruments as authorized by the proposed constitutional amendment. First, the bill provides that a defect in a charging instrument must be raised by the defendant before trial; after that point, the defendant's right to object to the defect is considered waived. Second, the bill authorizes the prosecutor to make substantive amendments to a defective charging instrument, eliminating the need to dismiss the case and start all over again by procuring a new indictment or filing a new information. An amendment would be permitted after trial commences only if the defendant does not object. The defense would be given at least 10 days to prepare its case after an amendment of the charging instrument. Senate Bill 169 would take effect December 1, 1985, if the voters approve the constitutional amendment at the general election in November.

If adopted, the constitutional amendment and accompanying legislation will not necessarily solve all the problems prosecutors have experienced with charging instruments. Due process guarantees in both the state and federal constitutions may well be held to require reversal of some convictions if the defense can show that it was misled or otherwise prejudiced by a defect in a charging instrument. The new law does not appear to affect the law applicable in a case in which the evidence produced at trial varies from the allegations of the charge, a situation that under current law may result in the reversal of a conviction if raised after trial. See Cox v. State, 608 S.W.2d 219 (Tex. Crim. App. 1980). However, the new law would probably reduce the number of cases in which a fatal variance occurs

because the prosecutor would have the opportunity to amend the charge if he discovers before trial that the specific allegations in the charging instrument do not correspond exactly with the evidence to be produced.

## ARGUMENTS

FOR:

1. The primary purpose of an indictment or information is to notify the defendant, with reasonable accuracy and specificity, that he has been charged with a crime, so that he may adequately prepare his defense. The proposed constitutional amendment will enable the legislature to require defects in charging instruments to be raised before trial. Eliminating the defendant's right to challenge a conviction after trial on the basis of a defective charging instrument, without a showing that the defect in any way violated the defendant's right to a fair trial, will put an end to the many reversals of convictions that occur under current law because of a harmless, but "fundamental," mistake in a charging instrument.

2. The "magic word" requirements of the current constitution with respect to criminal charges and other state writs and processes offer no real protection to a person accused of a crime or otherwise affected by such a document. The constitutional guarantee of due process will adequately ensure that criminal charging instruments and other state documents are clearly identified. The current requirements that such documents contain specific phrases have led to the invalidation of many criminal prosecutions because of minor errors that do not prejudice or harm the defendant in any way. In any event, minor details such as the precise wording of a charging instrument should be provided by statute rather than included in the state constitution.

3. Allowing the legislature to provide for the substantive amendment of charging instruments will provide important benefits. No longer will an error in a criminal charge necessarily require the dismissal of the case. This change will prevent the unnecessary delay that results from a dismissal and the problems that such a delay causes the prosecutor:   more paperwork; redundant trial preparation; presenting the case to the grand jury all over again; weakening of the case as witnesses forget, move away, or die; and running of the statute of limitations. The amending of a charge will not prejudice the rights of the accused since by statute the defense will be given additional time to prepare its case when a charge is amended.

AGAINST:

1. Eliminating the constitutional requirements that all state writs and processes contain the phrase "The State of Texas" and that criminal charges contain the currently specified phrases could lead to the use of charging instruments and other official documents that are not clearly identified, creating confusion over the validity of a particular document and even leading to reversals in criminal cases due to the use of insufficiently identified charging instruments.

2. The proposed amendment undermines the protective role of the grand jury in the criminal justice process. The grand jury has traditionally served as a check on the zeal of the prosecutor by refusing to indict when it considers the case to be a weak one or otherwise not appropriate for prosecution. By allowing the prosecutor to amend an indictment at any time before trial, the proposed amendment would allow the prosecutor to bypass the grand jury in preparing his amended charge. Under current law, a substantive change in the allegations of the indictment must be approved by the grand jury in a new indictment.

3. By allowing a defendant to raise a fundamental defect in a charging instrument at any time, current law provides an incentive for prosecutors to draft their charges with great care, ensuring that the court and the defendant know exactly what the charges are and that the court has jurisdiction over the case. By allowing the prosecutor to amend a defective charging instrument and giving the court jurisdiction of the case even if the charging instrument contains significant errors or omissions, the proposed constitutional amendment would encourage carelessness in the drafting of charging instruments. This practice could lead to a proliferation of errors in charging instruments, resulting in numerous amendments by the prosecutor and in confusion for the court and the defendant about exactly what the prosecutor is alleging. More errors and amendments of those errors would delay the progress of criminal cases in the courts, and would increase the public's cynicism toward the criminal justice system.

APPENDIX C

DEFENDANT STUDER, JIMMY RANDOLPH WM/5-18-34 CHARGE          IND EXPOSE

ADDRESS  3813 WILLIAM D. HAES #311, IRVING LOCATION     WRIT

FILING AGENCY  MPD  DATE FILED  5-15-87  COURT

COMPLAINANT  R.E. BISHOP                          MB87-26320

C/C

SERVICE NO.  87-19605   ARREST NO.  87-2911   I.D. NO.  62217

# INFORMATION

**In the Name and by the Authority of the State of Texas.**

NOW COMES THE CRIMINAL DISTRICT ATTORNEY of Dallas County, State of Texas, and presents in and to the

County Criminal Court _____ of Dallas County, State aforesaid, that one

**JIMMY RANDOLPH STUDER**

hereinafter styled Defendant heretofore, on or about the _____ 7TH day of _____ MAY _____ A.D., 19 ___ 87

in the County of Dallas and State of Texas, did unlawfully

then and there intentionally and knowingly expose his
genitals to R.E. BISHOP, hereinafter called complainant,
with intent to arouse and gratify the sexual desire of the
said defendant, and the defendant acted recklessly and in
conscious disregard of whether another person was present
who would be offended and alarmed by such act,

Against the peace and dignity of the state.

_____
Criminal District Attorney of Dallas County, Texas

CLINTON, Judge, concurring.

Article 1, § 10, Bill of Rights, Constitution of the State of Texas, guarantees that "no person shall be held to answer for a criminal offense, unless on *an indictment of a grand jury,* except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary," and with certain other exceptions not pertinent here.[1] In the latter cases the prosecution is usually on an information, as here.

Reduced to its simplest form, the controlling question in this cause is what constitutes an "information" purporting to charge a misdemeanor offense.

## I.

In this jurisdiction our first constitution mandated Congress to introduce by statute the common law of England, and declared that in all criminal cases "the common law shall be the rule of decision." Article IV, § 13, Constitution of the Republic. By Act of January 20, 1840, Congress complied, *viz:*

"... That the Common Law of England (so far as it is not inconsistent with the Constitution or the Acts of Congress now in force) shall, together with such acts, be the rule of decision in this Republic, and shall continue in full force until altered or repealed by Congress."

2 Gammel, Laws of Texas 177 (Gammel's).

At common law, offenses were charged through a presentment or indictment by a grand jury; whereas, as well as an instrument to allege misdemeanors, an information was a means of apprising the king's

court of an offense. See *Hurtado v. State of California,* 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884); *Clepper v. The State,* 4 Tex. 121, at 123 (1849) (Wheeler, J.). An indictment was "an *accusation* at the suit of the crown, found to be true by the oaths of a grand jury." Hawkins, Pleas of the Crown c. 25, § 1. Mr. Bishop elaborated: "An indictment is a *written accusation,* an oath, by at least twelve of a grand jury, against the person named therein, of a CRIME *which it defines,* to be carried into court, and there made of record," 1 Bishop Criminal Procedure (3rd Ed.) § 131.

Unlike designation of offenses in the Fifth Amendment, our first constitution mandated an indictment or presentment by grand jury for every offense. Constitution of the Republic, Declaration of Rights, Sixth, *viz:*

"And no freeman shall be holden to answer for any criminal charge, but on presentment or indictment by grand jury, except...."[2]

Congress enacted a sort of penal code but never promulgated a code of criminal procedure, as such. However, according to the Supreme Court in *Smith v. The Republic,* Dallam 473 (1842), "It was well settled that an indictment under a statute must follow and conform to the statute in stating the offense." Procedural matters existed in related statutes or, as dictated by the constitution and the Act of January 20, 1840, were governed by the common law.[3] After Statehood the laws of the Republic still in force not repugnant to higher authority were to continue and remain in

1. All emphasis here and throughout is mine unless otherwise noted.

2. Successive constitutions required indictment or information: e.g., Constitution of 1845, Article I, Bill of Rights, § 8: "... and no person shall be holden to answer for any criminal charge but on indictment or information, except...." Accord: Constitution of 1861. Article I, Bill of Rights, § 8; Constitution of 1866, Article I, Bill of Rights, § 8; Constitution of 1869, Article I, Bill of Rights, § 8.

3. In "An Act establishing jurisdiction and powers of the District Courts," § 4 assigned to them all criminal cases prosecuted "by indictment, information or presentment for treason, murder and other felonies, crimes and misdemeanors"

except those exclusively cognizable in some other court; § 33 provided for organization of the grand juries "to enquire and present all treasons, murders, felonies or other misdemeanors whatsoever." Act of December 22, 1836, 1 Gammel's 1258, at 1260, 1268.

There was "an Act Punishing Crimes and Misdemeanors," § 42 of which in pertinent part provided: "No person accused of any criminal offense shall be set at liberty ... after arraignment on account of any error or imperfection in the indictment or information, but the same proceedings shall be had again as though such person had never been arraigned." Act of December 21, 1936, 1 Gammel's 1247, at 1253.

force as laws of the State until they expired or were altered or repealed by the Legislature. Constitution of 1845, Article XII, § 4.2.[4] Furthermore, the Legislature was to direct that civil and criminal laws be revised, digested, arranged and published within five years.[5]

When it adopted the penal code the Sixth Legislature expressly repealed certain identified acts and parts of acts "together with all other laws and parts of laws relating to crimes and punishments," Act of August 28, 1856, § 3; in the code of criminal procedure § 4 repealed "all laws and parts of laws now in force which regulate or refer to the prevention, suppression, prosecution and proceeding for the punishment of crime," Act of August 26, 1856. The Seventh Legislature supplemented and amended each in separate acts: the former in Act of February 12, 1858, Acts, 1858, 7th Leg. Ch. 121, p. 156, 4 Gammel's 1028; the latter in Act of February 15, 1858, Acts 1858, 7th Leg., Ch. 151, p. 228, 4 Gammel's 1100, also repealing certain articles designated in § 2, *id.*, at 1028.[6]

Although principles and procedures are not the same, the Legislature addressed indictments and informations and their requisites together in Chapter III of the Old Code of Criminal Procedure.[7] That chapter treats indictments first, then informations, but at the end directs that "rules laid down in [prescribed articles] with respect to indictments are applicable also to informations." O.C. 406; O. & W. 406. From the common law and that provision Texas courts so held;[8] the Legislature continued to codify their holdings, *viz:* "The rules

4. Promptly, the first Legislature enacted three superceding laws, *viz:* an act regulating juries, § 10 providing for grand jury "to enquire of and present all crimes and offenses cognizable in the district court," and § 28 repealing contravening laws, Act of May 4, 1846, 1 Gammel's 1476, at 1479 and 1483; an act to organize district courts et cetera providing, *inter alia,* in § 2 substantially the same criminal jurisdiction and power previously delineated in § 4 of the Act of December 22, 1836, supra n. 2, Act of May 11, 1846, 2 Gammel's 1506; an act to regulate proceedings in district court, § 158 of which expressly repealed the district court act of December 22, 1936, supra n. 2, Act of May 13, 1846, 2 Gammel's 1669, at 1713. The next Legislature promulgated "An Act concerning Crimes and Punishments," in the nature of a penal code effective January 1, 1849, when all laws and parts of laws in conflict were repealed. Act of March 20, 1848, Acts 1848, 2nd Leg., Ch. 152, § 74, 3 Gammel's 219, at 232; that act was supplemented by Act of February 11, 1854, Acts 1854, 5th Leg. Ch. 49, 3 Gammel's 1502, sections 65–69, bearing on charging instruments, attached hereto as Appendix A.

5. Initially the Legislature directed the Attorney General to undertake the codification project. However, apparently he failed to perform satisfactorily, for in 1854 the Legislature authorized the Governor to appoint three commissioners to perform the task. Acts 1854, 5th Leg., Ch. 55, p. 76, 3 Gammel's 152.
John W. Harris, Esq., O.C. Hartley, Esq., and James Willie, Esq. were appointed, and in 1855 they submitted to the Legislature a proposed penal code and code of criminal procedure which, with amendments, were adopted at its adjourned session on August 28, 1856 and August 26, 1856, respectively. Willie was then assigned to oversee publication and to prepare an index to each code. Both were reproduced in a single volume: The Penal Code of Texas (Galveston News 1857). Each came to be known as "Old Code," one penal code, the other code of criminal procedure.

6. Having updated both codes, the Legislature then passed "An act to provide for a digest of the Laws of Texas," again authorizing the Governor to contract with qualified persons for preparation and publication of "a new and revised Digest of all the General Statute Laws of this State down to and including those passed at the present session of the Legislature," in accordance with specified terms and conditions. Act of February 15, 1858, Acts 1958, 7th Leg., Ch. 157, p. 252, 4 Gammel's 1125. The product is Oldham & White, Digest of the General Statute Laws of the State of Texas (John Marshall & Co. Austin 1859), hereafter "O. & W.".

7. Initially Chapter III implements the constitutional mandate in former article I, § 8, thus: that all felonies shall be presented by indictment only, except in specially provided cases; that misdemeanors may be presented by either information or indictment; that all offenses known to the penal laws of the state must be prosecuted by indictment or information, except contempt of court and special cases in which inferior courts exercise jurisdiction. O.C. 390–392; O. & W. 390–392.

8. See, e.g., *Haecker v. State,* 571 S.W.2d 920, at 921 (Tex.Cr.—App.1978); *Figueroa v. State,* 71 Tex.Cr.R. 371, 159 S.W. 1188 (1913); *Meyer v. State,* 65 Tex.Cr.R. 587, 145 S.W. 919, 920 (1912); *State v. Elliott,* 41 Tex. 224, at 226 (1874) (rules with respect to indictments applicable to informations).

with respect to allegations in an indictment and the certainty required apply also to an information." Article 21.23, V.A.C.C.P.

"An indictment is the written statement of a Grand Jury accusing a person, therein named, of some act or omission, which, by law, is declared to be an offence." O.C. 394; O. & W. 394. Noting that definition soon after it appeared in our statute, the Supreme Court pointed out:

"At the adoption of our constitution, and for a century previously in England and America, this is what was understood as constituting an indictment."

*Hewitt v. The State*, 25 Tex. 722, at 726 (1860). Accord: *State v. Duke*, 42 Tex. 355, at 461–462 (1875); see Carter, *Texas Court of Criminal Appeals*, 11 Tex.L.Rev. (1932–1933) 1, 301–302, nn. 154–157 and accompanying text.

Reacting to such decisions, the Legislature adopted the so-called "Common Sense Indictment Bill"—"An Act to prescribe the forms of indictments in certain cases." Acts 1881, 17th Leg. Ch. 57, p. 60. Early on, our predecessor court of appeals easily found many such forms unconstitutional.[9] This Court followed those decisions to the same end in, e.g., *Kennedy v. State*, 86 Tex.Cr.R. 450, 451, 216 S.W. 1086 (1919), *viz:*

"... An indictment under our statutes is 'the written statement of a grand jury

accusing a person therein named of some act or omission which, by law, is declared to be an offense,' and 'the offense must be set forth in plain and intelligible words.' Texas Code of Criminal Procedure, arts. 450 and 451. The bill of rights declares that one accused of crime 'shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof. * * * And no person shall be held to answer for a criminal offense, unless on indictment of a grand jury.' Constitution, art. 1, 10. The statute declaring the requisite of an indictment but confirms the law as it is contained in the Constitution. [citations omitted]."

Finally the Legislature relented and abandoned the "Common Sense Indictment" law. Compare former article 470, C.C.P.1911, with former article 409, C.C.P. 1925.

All those developments demonstrate, and in reason the majority cannot deny, that when citizens of Texas first adopted a constitution for their governance and with every constitution since then the meaning of the current command that "no person shall be held [holden] to answer for a [any] criminal offense [charge], unless [but] on [presentment or] an indictment of [by] a grand jury, except ..." embraced an

9. As applied to the offense of theft the court held the Act "repugnant to the Constitution [Bill of Rights, § 10] and that a defendant who has been tried under such an indictment has not been tried 'by due course of the law of the land.' (Bill of Rights, section 19)." *Williams v. The State*, 12 Tex.App. 395, at 401 (1882). In its entirety the *Williams* opinion by Judge Willson is such a compelling refutation to the majority views in this cause that it is attached hereto as Appendix B. And lest it be regarded an aberration, shortly the court reversed and dismissed a capital rape conviction had under the same "common-sense indictment" law in *Brinster v. The State*, 12 Tex.App. 612 (1882), and similarly disposed of convictions for other offenses.

In *Brinster*, supra, under that law the charging part of the indictment alleged: "Joseph Brinster, an adult male, did rape Mrs. Mattie McL. Davis, a female." For the court Judge Hurt quickly struck it down, *viz:*

"This indictment does not allege a single *act* which enters into and composes one of the elements of rape. An indictment is a written

statement of a grand jury, accusing a person therein named of some act or omission punished by law. Subjecting the indictment in this case to the above definition, it evidently follows that it is no indictment at all. But we are not disposed to enlarge. See the case of *Williams v. State* decided at this term, opinion by Judge Willson. (*Ante*, p. 395.) The judgment is reversed and the prosecution dismissed."

*Id.*, at 613 (emphasis by Judge Hurt).

See *Rodriguez v. The State*, 12 Tex.App. 552 (1882); *Hodges v. The State*, 12 Tex.App. 554 (1882); *Young v. The State*, 12 Tex.App. 614 (1882); *Allen v. The State*, 13 Tex.App. 28 (1882); *Flores v. The State*, 13 Tex.App. 337 (1883); *Brown v. The State*, 13 Tex.App. 347 (1883); *Gabrielsky v. The State*, 13 Tex.Cr.App. 428, at 439 (1883); *Insall v. The State*, 14 Tex. App. 145 (1883); *Drye v. The State*, 14 Tex.App. 185, at 191 (1883) ("common sense" indictment for murder "fatally defective"); see also, *Carter*, supra at 303–306.

understanding of those distinct requisites of an indictment under the common law captured and succinctly defined by Old Code article 394, *viz:*

"An indictment is the written statement of a Grand Jury accusing a person, therein named, of some act or omission, which, by law, is declared to be an offense."

Except that it be presented by an attorney for the State, an information was similarly defined, O.C. 402, and certain rules with respect to an indictment also applied to an information, O.C. 416. Those constitutionally valid articles as well as all others likewise enacted prove the Legislature has always had power to provide practice and procedures relating to indictments and informations. And axiomatic is that one or the other was necessary to invoke and provide jurisdiction and power in a trial court. *Burns v. The State,* 12 Tex.App. 394 (1882):

"... [A] conviction cannot be had for acts or omissions until they have first been charged. Result: punishment without indictment or information."

*Id.,* at 395.

What the majority fails to recognize and acknowledge is that in terms Article V, § 12(b), is essentially a restatement of the same points of constitutional and statutory law extant on the morning of the day § 12(b) was approved. Moreover, the majority seems oblivious to those fundamental reasons for insisting that a charging instrument meet the requisite degree of certainty long demanded by the common law from whence all our law springs, *viz:*

"... The charge must contain such a description of the crime, that the defendant may know what crime it is which he is called upon to answer; that the jury may appear to be warranted in their conclusion of 'guilty,' or 'not guilty,' upon the premises delivered to them; and that the court may see such a definite crime, that they may apply the punishment which the law prescribes."

*Bush v. the Republic of Texas,* 1 Tex. 455 (1846), quoting authoritatively from Chief Justice De Grey in *Rex v. Horne,* 2 Cowp. 682, reproduced in Arch. 6, Pl.40.[10]

II.

Article V, § 12 of the Texas Constitution, as recently amended, for the first time provides an express constitutional definition for "indictment or information," *viz:* "a written instrument ... charging a person with the commission of an offense." An indictment must be "presented to a court by a grand jury." See also, of course, Article I, § 10, supra. An information may be "presented ... by an attorney for the State[.]" "The presentment of an indictment or information to a court invests the court with jurisdiction of the cause." Article V, § 12(b), supra.

The information in this cause failed to specify conduct which allegedly amounted to recklessness, as required by Article 21.-15, V.A.C.C.P. We had formerly held such a defect to be of jurisdictional magnitude. *Gengnagel v. State,* 748 S.W.2d 227 (Tex. Cr.App.1988). Whether this defect now deprives a convicting court of jurisdiction depends upon whether the information is nevertheless sufficient to "charg[e] ... the commission of an offense." Article V, § 12, supra. If so, its mere "presentment" is enough to authorize the court to proceed.

For over a century it has been held that Article I, § 10, supra, requires all elements

**10.** Writing for the Supreme Court Justice Wheeler continued:

"... This I take to be what is meant by the certainty mentioned in the books. And it consists in two parts—the *matter* to be charged and the *manner* of charging it. As to the matter to be charged, whatever circumstances are necessary to constitute the crime imputed 'must be set out.' And again, 'When the circumstances go to *constitute* the crime, they must be set out.' It is otherwise when the crime alleged is such, independently of the circumstances; for then they may *aggra-*

*vate,* but can not *constitute* the offense. The character of the facts on which the question of guilt or innocence depends is to be determined by the jury. 'But the jury cannot take cognizance of them unless they appear upon the record, which they cannot do without an averment.'

'As to the *manner* of making the averments, in all cases those which are descriptions of crime, must be introduced upon the record by *averments* in opposition to *argument* and *inference.*'"

*Ibid.* (emphasis in original).

of an offense to be alleged in a charging instrument. *Williams v. The State,* 12 Tex.App. 395 (1882). Conviction based upon a charging instrument that fails to allege every element of an offense is "void," *American Plant Food Corporation v. State,* 508 S.W.2d 598, at 603 (Tex. Cr.App.1974), because the convicting court lacked jurisdiction over the cause to begin with. See *Garcia v. Dial,* 596 S.W.2d 524, at 527 (Tex.Cr.App.1980). Today the majority holds that something less than "each constituent element of an offense" need be alleged for an indictment or information to "charge" an offense, and hence invest the court with jurisdiction by virtue of its presentment, under Article V, § 12(b), supra. Major. op. at 272. Indeed, whether a "written instrument" will constitute an "indictment or information" is no longer a question of constitutional interpretation at all, but rather one for the Legislature alone, Article I, § 10 notwithstanding.

As I understand it, the majority bases its holding on the fact that the Legislature has amended Article 1.14, V.A.C.C.P., to provide that charging defects of "substance" may be forfeited by failure to object before trial. See Acts 1985, 69th Leg., ch. 577, p. 2196, § 1, eff. Dec. 1, 1985. Because Article 27.08, (1), V.A.C.C.P., lists as a defect of substance, *inter alia,* "[t]hat it does not appear [from the charging instrument] that an offense against the law was committed by the defendant[,]" and because this court has long equated defects of "substance" with "fundamental defects," i.e., defects which divest the convicting court of jurisdiction over the cause, the majority reasons that failure to allege all elements of an offense is a defect of substance in contemplation of Article 1.14(b), supra. It would hardly have been consistent for the Legislature to provide in Article 1.14(b), supra, that an accused "waives and forfeits" appellate objection to a charging defect of "substance," including failure to allege all elements of an offense, if it had not also meant for a charging instrument suffering from that particular defect nevertheless to constitute an "indictment or information" for purposes of Article V, § 12(b), supra. Thus, concludes the majority, "charging

... the commission of an offense" under the new constitutional provision could not have been intended to require allegation of every constituent element of the offense. See major. op. at 268 ("If omitting an element from an indictment is still a defect of substance in an indictment, it naturally follows that the indictment is still an indictment despite the omission of that element.")

The majority bolsters this conclusion with various indicia of legislative intent. From the materials examined it is clearly evident that many of this Court's rulings holding certain charging defects to be "fundamental" in nature were repugnant to the Legislature. That Representative Morales and Senator Harris each presented SB 169 to his respective chamber as a measure to eliminate appellate reversals based upon charging defects not raised at trial indicates both it and SJR 16 were aimed in part at fundamental defects. It is apparent the sponsors believed that at least some defects deemed fundamental by this Court were too inconsequential to justify voiding a conviction well after the fact. Indeed, when asked on the House Floor "what kinds" of "substance" defects the Bill related to, Morales answered, "Any and all."

Yet we know this statement cannot be taken literally. Some purported charging instruments may be so defective they cannot fairly be described as "charging ... an offense" by any definition. The Texas Legislative Council acknowledged as much when it allowed that "it is possible ... the courts will still find jurisdictional problems in certain defective charging instruments." The only clue provided this Court to determine which formerly "fundamental" charging defects the Legislature would have us consider of jurisdictional import, and which it would not, is use of the word "substance" in Article 1.14(b), supra.

But the meaning of "substance" is not without ambiguity in our caselaw. The majority proceeds upon the form/substance dichotomy articulated in *American Plant Food Corporation v. State,* supra. Accordingly, defects of substance are limited

to those recognized in Article 27.08, supra.[11] Defects of form are those enumerated in Article 27.09, V.A.C.C.P., embracing any "deficiency under Article 21.21(7), as that provision is further clarified by Articles 21.03, 21.04, 21.11 and 21.17, V.A.C.C.P. and prior decisions of this Court."[12] 508 S.W.2d at 603. Such deficiencies include "failure to give notice of precisely what the defendant is charged with and failure to allege sufficient facts to bar a subsequent conviction." *Id.*, at 604. In *American Plant Food* the Court ruled that, thus defined, defects of "substance" render a conviction void, and can be raised for the first time after judgment; while defects of "form" must be preserved for appeal by proper objection. Assuming this definition of "substance," Article 1.14(b), supra, would now seem to require objection to preserve error even in a charging instrument that fails to allege every element of the offense. See Article 27.08, (1), supra. Obviously the Legislature did not believe such a defect should deprive the trial court of jurisdiction. It could not have intended, then, that an indictment or information necessarily allege all elements in order to "charge" an offense under Article V, § 12, supra.

Caselaw has given the word "substance" another gloss, however, that is not consistent with the statutory scheme identified in *American Plant Food,* supra. In *Brasfield v. State,* 600 S.W.2d 288 (Tex.Cr.App. 1980), on State's motion for rehearing, the Court held that failure of an indictment to give sufficient notice as required by Article 21.02(7), supra, could not be remedied by way of amendment of the indictment. Instead, the indictment must be dismissed. The Court noted that former Article 28.10, V.A.C.C.P., provided that "[n]o matter of substance can be amended." The dichotomy of *American Plant Food,* supra, notwithstanding, the Court effectively held that notice was a matter of "substance," which could only be supplied in felony cases by a grand jury. See *Brasfield v. State,* supra, at 303 (Clinton, J., dissenting). Thus, what for purposes of waiver had been found to be a defect of form was found for purposes of amendment to be a matter of substance. It is at least plausible to argue that in amending Article 28.10, supra, to allow amendment of "a matter of form or substance," the Legislature merely intended to counteract *Brasfield's* holding that a notice defect in an

---

11. Article 27.08, supra, reads:
    "There is no exception to the substance of an indictment or information except:
    1. That it does not appear therefrom that an offense against the law was committed by the defendant;
    2. That it appears from the face thereof that a prosecution for the offense is barred by a lapse of time, or that the offense was committed after the finding of the indictment;
    3. That it contains matter which is a legal defense or bar to the prosecution; and
    4. That it shows upon its face that the court trying the case has no jurisdiction thereof."

12. Article 27.09(2), supra, reads in relevant part:
    "Exceptions to the form of an indictment or information may be taken for the following causes only:
    \*　　\*　　\*　　\*　　\*　　\*
    2. The want of any requisite prescribed by Articles 21.02 and 21.21."
    In both indictments and informations, "[t]he offense must be set forth in plain and intelligible words." Articles 21.02(7) and 21.21(7), supra. This requirement of "form" is clarified by Article 21.03, supra:
    "Everything should be stated in an indictment which is necessary to be proved."
    Article 21.04, supra:

"The certainty required in an indictment is such as will enable the accused to plead the judgment that may be given upon it in bar of any prosecution for the same offense."
Article 21.11, supra:
    "An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment; and in no case are the words 'force and arms' or 'contrary to the form of the statute' necessary."
and by Article 21.17, supra:
    "Words used in a statute to define an offense need not be strictly pursued in an indictment; it is sufficient to use other words conveying the same meaning, or which include the sense of the statutory words."
Finally, under Article 21.23, V.A.C.C.P.:
    "The rules with respect to allegations in an indictment and the certainty required apply also to an information."

indictment requires dismissal; [13] and that the Legislature meant "substance" in Article 1.14(b), supra, to have no more expansive a meaning than it does in Article 28.-10.[14]

It is true that this latter understanding of "substance" is inconsistent with the avowed legislative purpose to do away with at least some types of fundamental defects. However, it avoids many problems that arise when "substance" is construed in Article 1.14(b), supra, strictly in terms of Article 27.08, supra. For instance, failure to allege all elements of an offense is not the only defect of "substance" Article 27.08, supra, delineates. See n. 11, *ante*. Are we to hold on some future date that an indictment which shows on its face that the alleged offense is barred by limitations nevertheless authorizes the trial court to convict? *Id.*, subd. 2. Or that a court which the indictment on its face shows has no jurisdiction nevertheless does have jurisdiction because the accused raised no objection at trial? *Id.*, subd. 4.

**13.** Ironically, in *Janecka v. State*, 739 S.W.2d 813 (Tex.Cr.App.1987), this Court itself overruled *Brasfield v. State*, supra, nearly two years after amended Articles 1.14 and 28.10, and Article V, § 12, all supra, became effective.

**14.** We can affirm the court of appeals opinion in this cause by implementing the *Brasfield* notion of "substance" in Article 1.14(b), supra. The defect at issue in this cause is failure to comply with Article 21.15, supra, which requires particularity of pleading "[w]henever recklessness or criminal negligence enters into or is a part or element of any offense[.]" In construing this and precursor provisions the Court has characterized charging instruments suffering such a failure as "fatally defective," see *Scott v. State*, 171 Tex.Cr.R. 53, 344 S.W.2d 457 (1961); *Short v. State*, 387 S.W.2d 50 (Tex.Cr.App.1965); *Jones v. State*, 388 S.W.2d 716 (Tex.Cr.App. 1965). In *Gengnagel v. State*, supra, we accordingly designated this defect "fundamental," and reversed the conviction though no objection was voiced in the trial court. We have never held, however, that such an indictment is insufficient to charge an offense, at least not in the sense it failed to allege an element of the offense. Such a defect could reasonably come within the meaning of "substance" contemplated by *Brasfield*, supra, *viz:* specificity of allegation more than is necessary to state an offense, but nevertheless which must originate in a grand jury finding. Given this understanding of "substance," such a defect may now be amended

Suppose, moreover, that a charging instrument leaves out an element of the offense it purports to allege. The accused fails to object to this defect, and the State fails to amend under Article 28.10, supra. If the accused objects at trial to evidence tendered by the State to prove the missing element on the ground it is irrelevant to any material issue raised by the pleadings, is his objection well taken? Is the trial court authorized to include the unpled element in its instructions authorizing the jury to convict? If not, can a jury verdict of guilty on less than all elements of the statutorily defined offense authorize conviction, consistent with due process and due course of law? With characteristic understatement, Professor Dix aptly notes, "the difficulties of conducting trials on charging instruments that fail to allege all elements of the offense would be substantial." G. Dix, Texas Charging Instrument Law: The 1985 Revisions and the Continuing Need for Reform, 38 Baylor L.Rev. 1, at 39–40, n. 137 (Winter 1986).[15]

under Article 28.10, supra; moreover, failure to object will "waive or forfeit" error raised for the first time on appeal or collateral attack, under Article 1.14(b), supra.

In short, we can hold the defect in this cause to be nonjurisdictional without ever deciding whether "charging ... the commission of an offense" under Article V, § 12(b), supra, requires allegation of every constituent element.

**15.** These difficulties could be addressed, Professor Dix suggests:

"by giving broad meaning to the phrase 'defect, error, or irregularity ... in an indictment or information' as used in article 1.14(b). This phrase might reasonably be read as encompassing not only the defect itself but also other aspects of the proceeding that flow from or are based on the defect. Thus, such matters as evidence admissibility and the appropriateness of jury instructions, when based upon an unobjected to 'defect, error, or irregularity' of the charging instrument, might be among the matters which the defendant 'waives and forfeits' the right to raise and which cannot be 'raised on appeal or in any post conviction proceeding.'"

Dix, supra, at p. 40, n. 137. There is no indication from the materials before us that the Legislature even pondered these difficulties, however, much less that it intended "defect, error, or irregularity ... in an indictment or information" to be construed so sweepingly.

Without consideration of these difficulties to come, the majority announces that the Legislature will now be the sole arbiter of what it takes for a "written instrument" to "charg[e] ... an offense" under Article V, § 12. It is true that the Legislature may prescribe "contents, ... sufficiency, and requisites" of indictments and informations. But that has always been the case, subject only to this. Court's obligation to ensure that what the Legislature prescribed was consistent with that degree of certainty required by the common law and incorporated in Article I, § 10, *viz:* that an indictment or information "charge an offense." *Williams v. The State,* supra. See Part I, *ante.*

Moreover, as I have elsewhere indicated, that "no person shall be held to answer for a criminal offense, unless upon an indictment of a grand jury ..." requires:

> "that the grand jury find and express facts which are sufficient to show on the face of the indictment that the accused is alleged to have done that which a penal statute proscribes; or restated, the grand jury's constitutional function is to assure, by affirmative finding, that there is sufficient cause to believe that a person has *committed* each and every 'element' of an *offense* ... before he is held liable to defend against a prosecution by the State."

*Brasfield v. State,* supra, at 304–305 (Clinton, J., dissenting);[16] See also Interpretive Commentary, Article I, § 10, at p. 271. Any defect of "substance" of such a character that we cannot say the indictment serves its function under Article I, § 10, to document the grand jury's finding of sufficient cause cannot nevertheless be said to "charg[e] ... the commission of an offense" under Article V, § 12(b).[17] Professor Dix suggests the tension between these constitutional provisions could be alleviated by a judicial compromise "requiring only that the instrument make reasonably clear what criminal offense the grand jury intended." Dix, supra, at 43. Today the majority rejects even this compromise approach, and in my view accomplishes what the Legislature clearly did not intend. It has read indictment provisions in Article I, § 10, out of the Texas Constitution altogether.

This Court should not construe the phrase "charging a person with the commission of an offense" from Article V, § 12(b), any differently than we have always understood it under Article I, § 10. So long as a charging instrument purports to allege an offense by setting out the requisite elements thereof, we should require it to set out *all* the elements in order to "invest the court with jurisdiction of the cause." Perhaps this view disregards evidence of the rather nebulous legislative intent that at least some of the so-called "fundamental" defects this Court has recognized in the caselaw be wiped from the jurisprudential slate. But meaning and import of Article V, § 12(b), insofar as it defines "indictment or information," is a question for this Court. The Legislature is free to prescribe "contents, ... sufficiency, and requisites," but only within constitutional parameters. A charging instrument must "charg[e] ... an offense," both under Article V, § 12(b) and Article I, § 10. Use of the word "substance" in Article 1.14(b), supra, cannot change that.

Eschewing a narrower ground for decision, see n. 14, *ante,* the Court reaches to hold that an indictment or information no longer need allege every element of an offense to invest the trial court with jurisdiction over the cause. I cannot join in this evisceration of Article I, § 10, supra, and therefore join only the Court's judgment.

---

**16.** Emphasis in the original.

**17.** If failing to allege every element of an offense is a defect of "substance," surely a "written instrument" purporting to be an "indictment" or "information," but alleging *no* element of any statutorily defined offense, would also suffer a defect of "substance." If the majority is right, presumably the Legislature intended a charging instrument suffering *any* manner of "substance" defect nevertheless to be adequate to "charg[e] ... the commission of an offense" under Article V, § 12(b)—even when patently it does not. Apparently even the most grossly defective charging instrument will invest a trial court with jurisdiction.

## APPENDIX A

Sec. 65. All allegations in an indictment or other accusation which are unnecessary to be proved, may be omitted.

Sec. 66. No indictment or other accusation shall be quashed or deemed invalid for omitting to set forth that it is upon the oaths of the jurors, or upon their oaths and affirmation, or for the insertion of the words "upon their oaths" instead of "upon their "oath," or for not alledging that the offense was committed "within the jurisdiction of the Court," when the averments show that the case is one of which the Court has jurisdiction, or for the omission or misstatements of the title, occupation, estate or degree of the accused; or of the name or place of his residence; or for omitting the words "with force and arms," or the statement of any particular kind of force and arms; or for omitting to state, or stating imperfectly the time at which the offence was committed, when time is not the essence of the offence; or for failing to allege the value of an instrument which caused death, or that it was of no value; or for omitting to charge the offence to be "against the form of the statute" or "statutes;" or for the omission or insertion of any other words of mere form or surplusage.

Sec. 67. No indictment or other accusation shall be abated for any misnomer of the accused, but the court may, in case of misnomer appearing before or in the course of the trial, forthwith cause the indictment or accusation to be amended according to the fact.

Sec. 68. In cases of misdemeanors, no exception for defect or want of form in the presentment or other accusation shall be allowed so as to dismiss the prosecution, but the District–Attorney may amend the same under the direction of the court according to the right of the case.

Sec. 69. Judgment in any criminal case after verdict, shall not be arrested or reversed upon any exception to the indictment or other accusation, if the offence be charged with sufficient certainty for judgment to be given thereon according to the very right of the case.

## APPENDIX B

## AL WILLIAMS v. THE STATE.

1. INDICTMENT — CONSTITUTIONAL LAW.— The word "indictment" is used in section 10 of the Bill of Rights with its well-known legal signification, and, in conformity therewith, is defined by the Code of Procedure, article 419, as "the written statement of a grand jury, accusing a person therein named of some act or omission which, by law, is declared to be an offense." To be valid, therefore, an indictment must charge all acts or omissions essential to constitute the offense of which the defendant is accused; and this being the requirement of the Constitution, the Legislature has not the power to dispense with it, nor to validate as an indictment a

396      12 TEXAS COURT OF APPEALS. [Austin Term,

statement which, pretermitting the acts or omissions constituting an offense, charges the conclusion of law deducible therefrom.

2. SAME — THEFT — "COMMON-SENSE INDICTMENT BILL."— The form for an indictment for theft prescribed by the act of 1881, entitled "An act to prescribe the forms of indictments in certain cases," charges no facts, acts or omissions constituting the offense of theft, and is therefore repugnant to the Constitution of this State.

3. SAME — CASE STATED.— Indictment, after stating time and venue, charged that the appellant "did fraudulently take, steal and carry away four hogs, of the value each of four dollars, from A. L. W.; contrary to law, and against the peace and dignity of the State." Appellant excepted to the indictment because it does not charge the constituents of theft. *Held*, that the indictment, though it follows the form prescribed by the said act of 1881, is insufficient because it does not charge the ownership of the property, nor the want of the owner's consent to the taking of it, nor the intent to deprive the owner of its value, nor the intent to appropriate it to the use and benefit of the defendant. Omission of any one of these four elements of theft is fatal to the validity of the indictment.

APPEAL from the County Court of Freestone. Tried below before the Hon. O. C. KIRVEN, County Judge.

The indictment was framed in accordance with the form for theft prescribed by the "common-sense indictment" enactment of March 26, 1881, and is set out at large in the opinion. The defense excepted to its sufficiency, because it does not allege the ownership of the hogs, nor charge that they were taken without the consent of the owner, or with intent to deprive him of their value. The exceptions were overruled, and the defense reserved a bill of exceptions to the ruling.

The punishment assessed against the appellant was a fine of $100, and imprisonment for twenty-four hours in the county jail.

No brief for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

WILLSON, J.  The indictment in this case is as follows: "In the name and by the authority of the State of Texas. The grand jury of Freestone county, Texas, present in the District Court of Freestone county, that, about the third day of January, A. D. 1881, in Freestone county, Texas, Al. Williams did fraudulently take, steal and carry away four hogs, of the value each of four dollars ($4), from H. L. Williams; contrary to law and against the peace and dignity of the State.     J. B. CASEY,
             "Foreman of the Grand Jury."

This indictment omits to charge the following elements of the offense of theft, as defined in art. 724 of the Penal Code, viz.: (1) The ownership of the property; (2) that it was taken without the consent of the owner; (3) that it was taken with the intent to deprive the owner of the value of the same; and (4) with the intent to appropriate it to the use and benefit of the person taking it.  These omissions, or any one of them, would render the indictment substantially and fatally defective under all the previous decisions of this court, and of the Supreme Court of this State, upon this subject. *(Marshall* v. *State,* 31 Texas, 471; *State* v. *Sherlock,* 26 Texas, 106; *Ridgway* v. *State,* 41 Texas, 231; *Watts* v. *State,* 6 Texas Ct. App. 263.)

But it is contended that this indictment is sufficient under the act entitled, "An act to prescribe the requisites of indictments in certain cases," approved March 26, 1881. (Gen'l Laws 17th Leg. chap. 57, page 60.) That act prescribes a form for the offense of theft, as follows: "A. B. did steal a horse from C. D.;" or, "A. B. did steal a watch, of the value of fifty dollars, from C. D.;" and provides that such, or an analogous form, shall be sufficient.  (Sec. 11 of said act.)  The indictment before us would unquestionably be sufficient under the form prescribed by this statute.  But here the question arises, is the form itself valid? Is it not repugnant to the Constitution? This is a serious question, and one which we

approach with hesitation. It is a delicate and a solemn act in a court to declare unconstitutional an act of a coordinate branch of the government; but the duty to do this, in a proper case, cannot be properly declined. In the case before us the constitutionality of the prescribed form under which this indictment would be held good is directly raised, and must be passed upon. If the form is a valid one, this indictment is valid. If the form is not valid, the indictment is fatally defective.

Our organic law provides that "no person shall be held to answer for a criminal offense unless on indictment of a grand jury, except in cases in which the punishment is by fine, or imprisonment otherwise than in the penitentiary," etc. (Bill of Rights, sec. 10.) The case before us is one which might have been presented by information, being a misdemeanor; but, being presented by indictment, the same rules will apply to it that would govern were it a felony.

Now the question is, what meaning and scope are we to give to the provision quoted? What is meant by the word "indictment?" This word had a well-known legal signification at the time it was thus used. We must, therefore, conclude that it was thus used understandingly, and in its well-known legal sense. What then was this legal signification? We will quote some definitions of the term.

"This word, indictment, is said to be derived from the old French word *inditer*, which signifies to *indicate; to show, or point out*. Its object is to indicate the offense charged against the accused." (Bouvier's Law Dic. Title "Indictment.")

"It must be framed with sufficient certainty; for this purpose the charge must contain a description of the crime or misdemeanor of which the defendant is accused, and a statement of the facts by which it is constituted, so as to identify the accusation." (Ibid.)

It is a general rule, to which there are but a few excep-

tions, "that all the material facts and circumstances comprised in the definition of the offense" must be stated. "If any one material fact or circumstance be omitted, the indictment will be bad." (Archbold's Cr. Pl. & Prac. 85.)

"An indictment is a written accusation on oath by at least twelve of a grand jury, against a person named therein, of a crime which it defines, to be carried into court, and there made of record." (1 Bish. Cr. Pro. § 131.)

"The indictment must show on its face that it has been found by competent authority, in accordance with the requirements of law; and that a person mentioned therein has done, within the jurisdiction of the indictors, such and such particular acts, at a specific time; which acts, so done, constitute what the court can see, as a question of law, to be a crime," etc. (1 Bish. Cr. Pro. § 135.)

"An indictment is the written statement of a grand jury, accusing a person therein named of some act or omission which, by law, is declared to be an offense." (Code Crim. Proc. art. 419.)

Chief Justice Roberts, in *Hewitt* v. *State*, 25 Texas, 722, quotes the above definition from our Code, and says: "At the adoption of our Constitution, and for a century previously, both in England and America, this is what was understood as constituting an indictment." And again he says in the same opinion, "When an act is made the subject of a criminal charge, the constitutional provision requiring an indictment or information is at once brought into active force in favor of those who are accused of and prosecuted for said act; and if an indictment be preferred, it must be such an one as the framers of the Constitution contemplated."

In *State* v. *Duke*, 42 Texas, 455, Gould, justice, delivering the opinion of the court, cites and approves the case of *Hewitt* v. *State*, and says that in that case it was held to be beyond the power of the Legislature to dispense with

the statement in the indictment of that which is essential to the description of the offense.    He further says that a statute authorizing the omission of essential parts of the description of an offense would be in violation of the Constitution.    In support of the opinions in *Hewitt* v. *State* and *State* v. *Duke*, the following authorities are cited, viz.: *People* v. *Toynbee*, 2 Parker's Cr. R. N. Y. 329; *Wynehamer* v. *People*, Id. 421; *People* v. *Toynbee*, Id. 491; *State* v. *Learned*, 47 Me. 426; *Murphy* v. *State*, 24 Miss. 390; *Norris* v. *State*, 33 Miss. 373; *Niles* v. *State*, 24 Ala. 672; 28 Miss. 637.    In addition to the above cited authorities, we find the same principle maintained in the following other cases: *Bryan* v. *State*, 45 Ala. 88; *United States* v. *Mills*, 7 Pet. 142; *U. S.* v. *Cook*, 17 Wall. 174; *U. S.* v. *Cruikshank et al.* 92 U. S. 558.

We think it clear from these authorities that the meaning of the word "indictment" in the Bill of Rights requires that it should state the essential acts or omissions which constitute the offense with which the party is accused.    It must charge explicitly all that is essential to constitute the offense, and cannot be aided by intendments.    A statement of a legal result, a conclusion of law, will not be sufficient; the facts constituting the crime must be set forth, that the conclusion of law may be arrived at from the facts so stated.    (Bac. Abr. "Indictment," G. I.)

If such, then, was the meaning and scope of an indictment at the time of the adoption of the Bill of Rights, we must hold that it has the same meaning in the Bill of Rights, and that it is beyond the power of the Legislature to make that a good indictment which does not substantially come within the definition of an indictment as understood and used by the framers of the Constitution.

Does the indictment in question, or the form prescribed by the act of the Legislature which we have quoted, come within the meaning of an "indictment" as understood

Syllabus.

and used in the Bill of Rights? We think not. It charges no facts, acts or omissions constituting the offense of theft, as defined and described in our Code. It simply charges that the defendant "did steal, take and carry away." The word "steal" is a legal result of facts,— a mere conclusion of law. The Penal Code, art. 739, provides, "The words 'steal' or 'stolen,' when used in this Code in reference to the acquisition of property, include property acquired by theft." Is the indictment aided by this provision? We think not. Suppose the allegation was that "A. B. did commit theft of the horse of C. D.," would this not be simply charging a conclusion of law? Would it be sufficient in an indictment for murder to charge that A. B. did murder C. D., or in an indictment for arson to say that A. B. did commit arson on the house of C. D.? Surely it would not. Then upon what principle or authority could it be held that it would sufficient to charge in theft that A. B. did steal a horse from C. D.?

It is the opinion of this court that the indictment in this case is fatally defective, and that the form of indictment for theft prescribed in the act of the Legislature hereinbefore quoted is repugnant to the Constitution, and that a defendant who has been tried upon such an indictment has not been tried "by due course of the law of the land." (Bill of Rights, section 19.)

The judgment, therefore, is reversed and the prosecution dismissed.

*Reversed and dismissed.*

---

TEAGUE, Judge, concurring.

Because my vote to join the majority opinion by Judge Miller might be misconstrued in some quarters, I write this short concurring opinion.

My understanding of the majority opinion, as far as the State pleading an offense against the accused since Art. V, § 12, Texas Constitution, was amended, is that it is now permissible for the State to plead "bare-bones." For example, in charging the offense of murder, it is now necessary for the State only to plead the conclusion that the accused committed the offense of murder in such and such county on such and such date, without alleging any facts regarding the murder. Although I cannot imagine any prosecuting attorney of this State willing to plead "bare-bones," that is the perogative of the prosecuting attorneys of this State. However, I cannot imagine any competent defense attorney not filing a motion to quash the indictment in that instance. Thus, it appears to me that, if anything, the Constitutional Amendment will, from a practical standpoint, cause more work to be hoisted on our now overworked trial judges, if prosecuting attorneys plead "bare-bones." I would suggest to prosecuting attorneys, defense attorneys, and trial judges, that if the State desires to plead "bare-bones," and the de-

fendant and his attorney are going to enter into a plea bargain · agreement, which agreement is going to be accepted by the trial judge, that the indictment be replaced with an information, and then the indictment be dismissed on motion of the State.

With these brief remarks, I join the majority opinion by Judge MILLER.