NUMBER 13-05-311-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG







ISHMAEL SALAHUD-DIN 

A/K/A ISMAIL SALADIN
, Appellant,


v.



THE STATE OF TEXAS, Appellee.





On appeal from the 28th District Court


of Nueces County, Texas.






O P I N I O N



Before Chief Justice Valdez and Justices Yañez and Castillo


Opinion by Justice Castillo



 Ishmael Salahud-din appeals from his convictions on five counts of attempted
capital murder, one count of unlawful possession of cocaine with the intent to deliver,
and one count of escape. Salahud-din received life sentences for each count of
attempted capital murder and escape and a ninety-nine year sentence for the count of
cocaine possession. Salahud-din presents two points of error on appeal. We affirm.

I. Background

 On November 16, 2003, Salahud-din was visiting his brother and his brother's
fiancee at an apartment complex in Corpus Christi, Texas. Early that morning, his
brother and his brother's fiancee got into a loud argument. Officers Philip Blintiff and
Brian Crown responded to 911 calls from concerned residents of the apartment
complex. When Officers Blintiff and Crown arrived at the apartment complex,
Salahud-din was standing outside in the parking lot with his brother and his brother's
fiancee. While Officer Crown was speaking with Salahud-din's brother and his fiancee,
Officer Blintiff patted down Salahud-din and found on his person a bag containing a
small amount of marijuana. He arrested Salahud-din for misdemeanor possession of
marijuana and placed him in handcuffs in the back of his police car. Salahud-din
managed to pull out of the handcuffs and escape the police car through a rear window. 
He then ran to his car in the parking lot and retrieved his gun.

 Unable to apprehend Salahud-din, Officer Blintiff returned to his police car and
called for backup. Officer Jose Smith was the first to arrive on the scene and was
almost immediately shot in the face by Salahud-din. Officer Blintiff looked to the
general area where Officer Smith had been shot and witnessed Salahud-din standing
over Officer Smith. Fearing that Salahud-din was about to murder Officer Smith,
Officer Blintiff ran towards Salahud-din and fired two or three shots at him. A gunfight
ensued and Officer Blintiff called again for more backup. Officers Israel Carrasco and
Pedro Muniz responded to Officer Blintiff's second call and arrived at the scene of the
gunfight within minutes. Salahud-din shot Officer Carrasco twice and Officer Blintiff
once during the continuing gunfight. Having been awakened by the commotion,
Officer Javier Cantu, an off-duty police officer living at the apartment complex, arrived
at the scene partially in uniform. After observing Salahud-din lying underneath a car
and firing a weapon, Officer Cantu shot him twice in the legs. The police then
arrested Salahud-din and searched his car, where they found nearly forty grams of
cocaine.

II. Points of Error

 Salahud-din raises two points of error on appeal. His first point of error alleges
that the trial court's failure to order a competency hearing or inquiry denied him his
due process rights to a fair and impartial trial. His second point of error alleges that
both the trial court's jury charge and the indictment omitted an essential element of
the offense of attempted capital murder and thereby denied him his due process rights
to a fair and impartial trial.

III. Competency

 By his first point of error, Salahud-din alleges that the trial court had the duty
to conduct a competency hearing outside the presence of the jury based on evidence
available during trial, and that its failure to do so violated his due process rights. The
State responds that Salahud-din forfeited error because defense counsel did not pursue
the issue of competency to stand trial and, regardless, the evidence presented during
trial failed to raise the issue.

A. Standard of Review

 We review a trial courts failure to conduct a competency inquiry or hearing
under an abuse of discretion standard. Moore v. State, 999 S.W.2d 385, 393 (Tex.
Crim. App. 1999). The test for abuse of discretion is:

not whether, in the opinion of the reviewing court, the facts present an
appropriate case for the trial court's action. Rather, it is a question of
whether the trial court acted without reference to any guiding rules and
principles. Another way of stating the test is whether the act was
arbitrary or unreasonable. The mere fact that a trial judge may decide a
matter within his discretionary authority in a different manner than an
appellate judge in a similar circumstance does not demonstrate that an
abuse of discretion has occurred.

Montgomery v. State, 810 S.W.2d 372,380 (Tex. Crim. App. 1990) (en banc)
(quoting Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985)).

B. The Law

 In both Texas and the federal system, "it has long been accepted that a person
whose mental condition is such that he lacks the capacity to understand the nature
and object of the proceedings against him, to consult with counsel, and to assist in
preparing his defense may not be subjected to a trial." McDaniel v. State, 98 S.W.3d
704, 709 (Tex. Crim. App. 2003) (quoting Drope v. Missouri, 420 U.S. 162, 171-72
(1975)). The conviction of an accused person while he is legally incompetent violates
due process. Id. Thus, to protect a criminal defendant's constitutional rights, a trial
court must inquire into the accused's mental competence once the issue is sufficiently
raised. Id. These due process standards are built into the Texas Code of Criminal
Procedure. Id.; see also Tex. Code Crim. Proc. Ann. art. 46B.001-.171 (Vernon Supp.
2006). (1)

 Article 46B.003(a) of the code of criminal procedure provides that "[a] person
is incompetent to stand trial if the person does not have: (1) sufficient present ability
to consult with the person's lawyer with a reasonable degree of rational understanding;
or (2) a rational as well as factual understanding of the proceedings against the
person." Tex. Code Crim. Proc. Ann. art. 46B.003(a) (Vernon Supp. 2006). An
accused person is presumed competent to stand trial and shall be found competent to
stand trial unless proved incompetent by a preponderance of the evidence. Tex. Code
Crim. Proc. Ann. art. 46B.003(b) (Vernon Supp. 2006).

 Under the current statutory scheme, either party may suggest by motion, or the
trial court may suggest on its own motion, that the defendant may be incompetent to
stand trial. Tex. Code Crim. Proc. Ann. art. 46B.004(a) (Vernon Supp. 2006). If
evidence suggesting the defendant may be incompetent to stand trial comes to the
attention of the court, the court on its own motion shall suggest that the defendant
may be incompetent to stand trial. Tex. Code Crim. Proc. Ann. art. 46B.004(b)
(Vernon Supp. 2006). This duty of the court to raise the issue of the defendant's
competency continues after the trial on the merits begins. Tex. Code Crim. Proc. Ann.
art. 46B.005(d) (Vernon Supp. 2006). Once the issue of the defendant's competency
to stand trial has been sufficiently raised, the court shall determine by "informal
inquiry" whether there is some evidence from any source that would support a finding
that the defendant may be incompetent to stand trial. Tex. Code Crim. Proc. Ann. art.
46B.004(c) (Vernon Supp. 2006). If after an informal inquiry the court determines
that evidence exists to support a finding of incompetency, the court shall order an
examination to determine whether the defendant is incompetent to stand trial in a
criminal case. Tex. Code Crim. Proc. Ann. art. 46B.005(a) (Vernon Supp. 2006).

 Evidence sufficient to prompt a competency hearing or inquiry must raise a
"bona fide doubt" in the mind of the trial judge as to the defendant's competency to
stand trial; a bona fide doubt exists if the evidence indicates recent severe mental
illness, or at least moderate mental retardation, or truly bizarre acts by the defendant. 
Collier v. State, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997) (en banc) (citing Mata
v. State, 632 S.W.2d 355, 359 (Tex. Crim. App. 1982)). Although the statutory
language in the code of criminal procedure governing competency hearings has
recently been amended, several of our sister courts continue to apply the bona fide
doubt construct when reviewing a trial court's failure to order a competency hearing. 
See Walker v. State, 2006 Tex. App. LEXIS 4276 (Tex. App.--Waco May 17, 2006,
no pet.) (not designated for publication); Hernandez v. State, 2006 Tex. App. LEXIS
2835 (Tex. App.--Eastland April 6, 2006, no pet.) (not designated for publication);
Ford v. State, 2006 Tex. App. LEXIS 2165 (Tex. App.--Dallas Mar. 22, 2006, no pet.)
(not designated for publication); McGowan v. State, 2006 Tex. App. LEXIS 286 (Tex.
App.--Houston [14th Dist.] Jan. 12, 2006, no pet.) (not designated for publication);
Richardson v. State, 2005 Tex. App. LEXIS 951, at *5 (Tex. App.--Houston [1st
Dist.] Feb. 3, 2005, no pet.) (not designated for publication). We do the same today.

C. Analysis

 In this case, neither party nor the trial court sufficiently raised the issue of
Salahud-din's competency at any time during trial. The only evidence that Salahud-din
relies on to raise an alleged bona fide doubt as to his competency to stand trial are
three pretrial psychological examinations ordered by the court. (2) Salahud-din forfeited
any purported error with regard to these psychological evaluations because he failed
to object to the trial court's proceeding to trial. McDaniel, 98 S.W.3d at 711.

 Moreover, based on our review of the record, none of the evidence available
during trial suggests that Salahud-din did not have (1) sufficient present ability to
consult with his lawyer with a reasonable degree of rational understanding or (2) a
rational as well as factual understanding of the proceedings against him. See Tex.
Code Crim. Proc. art. 46B.003(a) (Vernon Supp. 2006). There is no evidence
indicating recent severe mental illness, or at least moderate mental retardation, or truly
bizarre acts by Salahud-din. See Collier, 959 S.W.2d at 625. Importantly, Salahud-din
testified in his own defense at trial. Salahud-din lucidly answered questions from both
defense counsel and the State as he attempted to establish self-defense as the
justification for his actions. There is nothing plainly irrational about his testimony. 
Thus, we cannot conclude that the trial court's failure to order a competency hearing
during trial constituted an abuse of its discretion. See Moore, 999 S.W.2d at 393
(holding that evidence is usually sufficient to create a bona fide doubt if it shows
"recent severe mental illness, at least moderate retardation, or truly bizarre acts by the
defendant."). Accordingly, we overrule Salahud-din's first point of error.

IV. Indictment and Jury Charge

A. Jury Charge

 By the first sub-issue of his second point of error, Salahud-din alleges that the
jury charge omitted an essential element of the offense of attempted capital murder
and thereby denied him his due process rights. In particular, Salahud-din argues that
the charge failed to require the jury to find, beyond a reasonable doubt, (1) that the
victims were police officers acting in lawful discharge of their duties and (2) that
Salahud-din knew the victims were police officers at the time of the offense. See Tex.
Pen. Code Ann. §19.03 (a)(1) (Vernon Supp. 2006). The State responds that Salahud-din failed to preserve error and that the jury charge, when read as a whole, sufficiently
described the offense of attempted capital murder.

1. Standard of Review

 Salahud-din failed to object to the jury charge at trial and thus did not preserve
error. Tex. R. App. P. 33.1; Tex. Code Crim. Proc. art. 36.19 (Vernon 2006). Salahud-din actually did object to a previous jury charge because it did not contain an
instruction regarding the lesser-included offense of assault on a peace officer, but he
later negotiated a new jury charge with the State which contained instructions
regarding self-defense. See generally Skillern v. State, 890 S.W.2d 849, 880 (Tex.
App.--Austin 1994, pet. ref'd) ("Appellant cannot complain about the charge which
the trial court gave at his request."). (3)
 Absent timely objection at trial, review of a jury
charge is limited to fundamental error analysis and, thus, to a determination of whether
the defendant's rights were injured to the extent that he was denied a fair trial. See
Tex. Code Crim. Proc. art. 36.19 (Vernon 2006); see also Jimenez v. State, 32
S.W.3d 233, 233-34 (Tex. Crim. App. 2000); Almanza v. State, 686 S.W.2d 157,
172 (Tex. Crim. App. 1985); Ashworth v. State, 418 S.W.2d 668, 670-71 (Tex.
Crim. App. 1967). Thus, even though he failed to complain of the new jury charge at
trial, Salahud-din may still argue on appeal that the jury charge was fundamentally
erroneous. 

2. The Law

 A jury charge must be viewed as a whole in order to determine the existence
of error. White v. State, 610 S.W.2d 504, 507 (Tex. Crim. App. 1981); Ybarra v.
State, 890 S.W.2d 98, 106 (Tex. App.--San Antonio 1994); Cain v. State, 633
S.W.2d 325, 325 (Tex. App.--Houston [14th Dist.] 1982); Howard v. State, 625
S.W.2d 440, 442 (Tex. App.--Houston [14th Dist.] 1981). Review should not be
limited to parts of the charge standing alone. Ybarra, 890 S.W.2d at 106. When the
jury charge taken as a whole sufficiently presents the applicable law and protects the
defendant's rights, the judgment resulting therefrom will not be reversed on appeal. 
Parker v. State, 594 S.W.2d 419, 424 (Tex. Crim. App. 1980).

3. Analysis

 The jury charge in this case tracked the indictment and correctly applied the law
to the facts. It adopted the precise language of the penal code and identified the
particular theory under which the State prosecuted Salahud-din. It alleged in its
application paragraph that Salahud-din had the "specific intent to commit capital
murder." It provided in its definitional section that a "person commits a capital murder
when a person murders a peace officer who is acting in lawful discharge of an official
duty and who the person knows is a peace officer." It further defined "peace officer"
to include police officers of an incorporated city or town. The jury charge also
provided the definitions drawn directly from the penal code of "criminal attempt" and
the mens rea elements of "knowingly" and "intentionally." (4) Because the language of
the jury charge was sufficient, we overrule Salahud-din's first sub-issue.

 Even assuming that the jury charge was erroneous, any harm done to Salahud-din must have been "egregious" to warrant reversal. See Pickens v. State, 165
S.W.3d 675, 680 (Tex. Crim. App. 2005) (citing Thomas v. State, 723 S.W.2d 696,
707 (Tex. Crim. App. 1986)). Whenever the accused has claimed fundamental error,
including error involving the omission of an entire element from the authorization
paragraph, the court reviews not only the entire jury charge, but also the state of the
evidence in the case, before deciding whether the error was so harmful as to require
reversal. Almanza, 686 S.W.2d at 172. The actual degree of harm is to be assayed
in light of the entire jury charge, the state of the evidence, including contested issues,
and the weight of probative evidence, argument of counsel, and any other relevant
information revealed by the record as a whole. Id. at 171. Harm sufficient to warrant
reversal must be actual, not merely theoretical, harm. Id. at 174.

 Our review of the record reveals that any harm done would not have been
sufficient to warrant reversal. The State established conclusively that (1) each victim
was a police officer, (5) (2) it was reasonably clear that each victim was a police officer, (6)
and (3) each victim was acting in lawful discharge of his duty. (7) Salahud-din's own
testimony clearly demonstrated that he knew that the victims were police officers. (8) 
Defense counsel even stipulated throughout the trial and at closing argument that the
issue of whether the victims were police officers was not in dispute.

 We also observe that the jury could just as reasonably have convicted Salahud-din of attempted capital murder under the theory that he attempted to murder more
than one person. Tex. Pen. Code Ann. § 19.03 (a)(7)(A) (Vernon Supp. 2006). In this
case, there were five victims. Because the jury determined that Salahud-din attempted
to murder all five victims in the course of the same criminal transaction, the elements
of section 19.03 were satisfied even without proving beyond a reasonable doubt that
the victims were police officers acting in lawful discharge of their duties. See Tex.
Pen. Code Ann. § 19.03 (a)(7) (Vernon Supp. 2006).

B. Form of the Indictment

 By the second sub-issue of his second point of error, Salahud-din alleges that
the indictment was defective because it failed to adequately define the offense of
attempted capital murder. In particular, Salahud-din argues that the indictment omitted
elements of the offense of attempted capital murder because (1) it failed to identify
the victims as police officers acting in lawful discharge of their duties, and (2) it failed
to allege that Salahud-din knew the victims were police officers at the time of the
offense. See Tex. Pen. Code Ann. § 19.03 (a)(1) (Vernon Supp. 2005). The failure
to allege an element of an offense in an indictment is a defect in the substance of the
indictment. Studer v. State, 799 S.W.2d 263, 268 (Tex. Crim. App. 1990) (en banc). 
The State responds that Salahud-din failed to preserve error and, regardless, the
indictment was sufficient.

 Prior to 1985, the Texas Constitution addressed the omission of an offense's
elements from an indictment as a fundamental defect that deprived the court of
jurisdiction. See generally Studer, 799 S.W.2d 263. Accordingly, such errors could
be raised for the first time on appeal. Id. at 266-67. On November 5, 1985, Texans
voted for constitutional amendments designed to reduce the frequency with which
criminal convictions were reversed because of defective indictments. Id. at 268-71. 
The 69th Legislature amended the Code of Criminal Procedure in conjunction with
those constitutional amendments. (9) Id. The combined effect of the statutory and
constitutional amendments eliminated insufficiencies in the indictment from the list of
fundamental defects that deprived a trial court of jurisdiction. Id. at 271-73. Under
the amended laws, most defects in an indictment must now be raised before trial or
the right to complain of the defect is forfeited. Id. The amended provision in the code
of criminal procedure requires, among other things, that substance exceptions be
raised pre-trial or otherwise the accused has forfeited his right to raise the objection
on appeal or by collateral attack. See Tex. Code Crim. Proc. Ann. art. 1.14 (b)
(Vernon 2005). Since omitting an element from an indictment is a defect of substance
in an indictment, it naturally follows that the indictment is still an indictment despite
the omission of that element. Studer, 799 S.W.2d at 268-71. Because Salahud-din
failed to object to the allegedly defective indictment before trial, he may not raise the
issue on appeal. We overrule his second sub-issue. (10)

V. Conclusion

 We have reviewed, as we must, Salahud-din's two points of error under the
applicable appellate standards of review. Having overruled both points of error, we
affirm the judgment.

 ERRLINDA CASTILLO

 Justice

Publish.

Tex. R. App. P. 47.2(b).


Opinion delivered and filed

this 16th day of November, 2006.

 
1. Former article 46.02 of the code of criminal procedure, upon which Salahud-din relies on
appeal, has been repealed and does not apply to proceedings commenced after January 1, 2004. Act
of May 14, 2003, 78th Leg., R.S., ch. 35, §§ 15, 16, 2003 Tex. Gen. Laws 57, 72. Because the
proceedings in the instant case commenced after January 1, 2004, we refer to article 46B.001-.171.
2. The only psychological evaluation contained in the record does not support a finding of
incompetency. In his letter to the trial court, the court-appointed psychiatrist explained that because
Salahud-din refused to cooperate with him, he was unable to provide the court with a detailed analysis
of his psychological disposition, except to state that "In the brief interaction, his associations appeared
to be intact. I did not detect any psychosis."
3. We are mindful that unobjected-to jury-charge error warrants reversal only when the error
results in egregious harm and that the question of whether the defendant has preserved jury-charge error
is relevant only if there is a determination that error actually occurred. See Pickens v. State, 165
S.W.3d 675, 680 (Tex. Crim. App. 2005) (citing Thomas v. State, 723 S.W.2d 696, 707 (Tex. Crim.
App. 1986)). 


4. See Caldwell v. State, 971 S.W.2d 663, 667 (Tex. App.-- Dallas 1998, pet. ref'd) ("The
abstract or definitional paragraphs serve as a kind of glossary to help the jury understand the meaning
of concepts and terms used in the application paragraphs of the charge. Thus, a charge is adequate if
it contains an application paragraph that authorizes a conviction under conditions specified by other
paragraphs of the jury charge to which the application paragraph necessarily and unambiguously refers,
or contains some logically consistent combination of such paragraphs.").
5. Each victim responded affirmatively when asked by the State whether he was a police officer
with the Corpus Christi Police Department.
6. The State asked each victim what he was wearing the night of the gunfight. Four of the five
responded that they were in full police uniform. The fifth officer, Officer Cantu, was wearing a police
T-shirt and a police belt with a gun.
7. The State asked each victim why he was present at the scene of the gunfight. Four of the
victims were responding either to calls from residents or calls from other officers. The fifth officer,
Officer Cantu, lived at the apartment complex and responded once he heard the gunfight.
8. Salahud-din testified, "I loaded my firearm and I just waited for him to drive up in a car because
I knew that's where he had ran to, next. . . . And I just stood there, and then some time went by and
I remember a car drove up real fast. It was a police car. And I was like, here he is, right here. And he
drove up and he jumped out of the car with his gun and aimed to shoot me." Defense counsel then
asked Salahud-din, "Did you think at that time it was Officer Blintiff?" Salahud-din responded "Yes, sir."
9. See Tex. Code Crim. Proc. Ann. art. 1.14 (b) (Vernon 2005) which states: 


If the defendant does not object to a defect, error, or irregularity of form or substance
in an indictment or information before the date on which the trial on the merits
commences, he waives and forfeits the right to object to the defect, error, or irregularity
and he may not raise the objection on appeal or in any other post conviction proceeding.
10. See Fisher v. State, 887 S.W.2d 49 (Tex. Crim. App. 1994) ("Defects of substance . . .
contained in the indictment must be objected to at trial or are waived, and 'defect of substance' includes
omission of required element or elements of the offense charged."); Limas v. State, 941 S.W.2d 198,
203 (Tex. App.--Corpus Christi 1996, pet. ref'd) ("The defendant was required to object to defects in
the indictment prior to trial, and the defendant's failure to do so waived any right to complain of
deficiencies in the indictment; omissions from the indictment could have been raised before trial, as it
was obvious that the State sought to prosecute for attempted capital murder.").