

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0399-17

## KENYETTA DANYELL WALKER, Appellant

## v.

## THE STATE OF TEXAS

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE SEVENTH COURT OF APPEALS
## ORANGE COUNTY

**Newell, J., delivered the opinion for a unanimous Court.**

If the jury convicts the defendant of a "non-existent" greater offense, can a court of appeals reform the judgment to reflect a conviction for an existent "lesser-included" offense? Yes, if the reformed offense is authorized by the indictment. In this case, it was. We therefore remand the case to the court of appeals to determine a) whether the jury necessarily found each element of the offense of

possession with intent to deliver beyond a reasonable doubt, and b) whether the evidence was legally sufficient to support the conviction for that offense.

## Facts

Appellant lived in a house that police identified as a "a major distribution point" for drugs along with her two daughters and a man who went by the nickname "Pill."[1]  On two occasions, a confidential informant had purchased marijuana and synthetic marijuana at the house. Additionally, people known to the police had been making short, frequent stops at the house when Appellant was believed to be present.

One night, three intruders broke into the house through the front door.  A gunfight ensued.  One of the intruders escaped the home unscathed.  Another limped away.  The final intruder crawled out of the house to die on the lawn.  Police were called out to the scene.

Surveillance cameras around the house showed that after the shootout, but before the police arrived, Appellant made several trips outside.  First, she carried a bag of more than 400 grams of dihydrocodeinone pills to an Infiniti parked outside.  Then she sprayed

---

[1] "Pill" was identified by name as Desrick Warren.  Another man, Brian Gant, sometimes stayed at the house as well.

some Febreze in the air. Finally, she gave a pistol to "Pill" who left the scene, but not before he hit the dead man on the lawn.

Police arrived to find the dead body lying on the ground outside of the house and occasional guest, Brian Grant (who had also been shot), sitting near the porch. A subsequent search of the house uncovered a large amount of controlled substances and drug paraphernalia. Police identified what they believed to be cocaine, blue vials of PCP, Xanax, and codeine cough syrup in a baby bottle. The smell of raw marijuana in one room was so strong it made the police lieutenant's eyes water. Police also recovered digital scales, re-sealable plastic bags, and a drawer full of small denomination bills. Finally, they recovered the pills from the bag Appellant had placed in the parked Infiniti.

### Charges

The State charged Appellant with engaging in organized criminal activity by commission of the predicate offense of possession of a controlled substance. The indictment was later amended to include the allegation that Appellant had possessed the controlled substance "with intent to deliver." Appellant did not object to the indictment or otherwise argue to the trial court that the indictment was substantively defective for

alleging a non-existent offense.[2]

The jury charge in this case tracked the language of the indictment. It instructed the jury to determine whether, beyond a reasonable doubt, Appellant or another member of a criminal combination possessed 400 grams of dihydrocodeinone, hydrocodone with intent to deliver.  It also instructed the jury that it had to find that Appellant acted as a party to the offense if it believed one of the other members of the criminal combination, rather than Appellant, had possessed the controlled substance with the intent to deliver.  The relevant portion of the jury charge reads as follows:

**Application of Law to Facts**

Engaging in Organized Criminal Activity

You must decide whether the State has proved, beyond a reasonable doubt the following elements.  The elements are that-

1.    One or more of the following persons: the defendant KENYETTA DANYELL WALKER or BRIAN GANT or DESRICK WARREN, possessed Dihydrocodeinone (Hydrocodone) in Orange County, Texas, on or about December 12, 2014; and

---

[2] This all was prior to this Court's decision in *Hughitt v. State*, 583 S.W.3d 623 (Tex. Crim. App. 2019), which held that possession of a controlled substance with intent to deliver is not a valid predicate offense for the crime of engaging in organized criminal activity.

2.     The Dihydrocodeinone, Hydrocodone was, by aggregate weight, including adulterants or dilutants, 400 grams or more; and

3.     Such person knew he/she was possessing a controlled substance; and

4.     Such person intended to deliver the controlled substance; and

5.     [T]he defendant intended to establish, maintain, or participate in a combination or in the profits of a combination.

       If the person you found in #1, 3, and 4 was not the defendant, then the State must prove beyond a reasonable doubt that the defendant acted with intent to promote or assist the commission of the offense; and she aided or attempted to aid the other person to commit the offense.

You must agree on elements listed above.

If you all agree the State has proven each of the elements above, you must find the defendant "guilty" of the offense of Engaging in Organized Criminal Activity, and your deliberations are complete.

If you all agree the State has failed to prove, beyond a reasonable doubt, one more of elements listed above, you must the [sic] consider the lesser included offense of Possession of a Controlled Substance.

The jury charge also contained an instruction on the "lesser" offense of possession of a controlled substance. The jury convicted Appellant of the "greater" offense of engaging in organized criminal activity.

## Appeal

Appellant raised a challenge to the sufficiency of the evidence to the court of appeals. She did not argue that the charged offense lacked a qualifying predicate offense. To its credit, the court of appeals noticed this issue and requested supplemental briefing on it. In response to the court of appeals' request for briefing, Appellant argued that the indictment was fundamentally defective because it failed to allege an offense.

The court of appeals recognized that Appellant had waived her argument about the defect in the indictment, but still reversed the conviction. The court resolved Appellant's sufficiency claim by reviewing the evidence in relation to the jury charge given to the jury rather than in relation to a hypothetically correct one. Through that lens, the court held that there was "more than some" evidence that would have enabled a reasonable jury to conclude beyond a reasonable doubt that Appellant had committed the offense of engaging in organized criminal activity as alleged in the indictment.[3]

Then, the court of appeals addressed "a circumstance unmentioned

---

[3] *Walker v. State*, 2017 WL 1292006, at *2 (Tex. App.–Amarillo Mar. 30, 2017) (not designated for publication).

by appellant"—the failure to incorporate all the elements of engaging in the jury instructions.[4]   Characterizing the issue as "unassigned" jury charge error, the court considered the effect of the lack of a qualifying predicate offense for the alleged crime of engaging in organized criminal activity.   The court held that the error in the jury charge—the State's failure to incorporate some elements of engaging in organized criminal activity, but not others—was egregiously harmful and remanded the case for a new trial.

We granted the State's petition for discretionary review to answer the question, "Can a conviction for a charged, but non-existent, offense be reformed to a subsumed and proven offense that does exist?" According to the State, the court of appeals erred in its legal sufficiency analysis because it measured the error against the erroneous jury instruction instead of the essential elements of the offense.   What the court of appeals should have done, the State argues, is a) hold that the evidence was legally insufficient to support the conviction for engaging in criminal activity, and b) reform the conviction to the "lesser-included" offense of possession of a controlled substance with intent to deliver.   In

---

[4] *Id.*

the State's view, the court of appeals never should have addressed the issue as unassigned jury charge error.

Appellant agrees with the State that the intermediate court's legal sufficiency analysis was erroneous. According to Appellant, the evidence was legally insufficient because engaging in criminal activity based upon possession with intent to deliver is not an offense. However, Appellant disagrees with the State that the court of appeals should have reformed the judgment to reflect a conviction for possession of a controlled substance. Instead, Appellant argues that the only proper remedy is an acquittal.

Treating the issue in this case as a jury instruction error, just as the court of appeals did, has intuitive appeal in light of the defects in the indictment and the jury charge. However, we agree with the State that we should analyze this as a legal sufficiency issue for a number of reasons. First, Appellant only raised a sufficiency claim in the court below. Second, when the issue regarding the lack of a qualifying predicate was drawn to Appellant's attention, she argued that the indictment was fundamentally defective, not that the jury charge was erroneous. Finally, both parties, in their briefing before this Court, agree that we are faced with a sufficiency issue, not a jury charge issue.

Consequently, we address whether the court of appeals properly analyzed Appellant's sufficiency argument and then decide whether reformation of the judgment is the appropriate remedy in light of the flaws in the indictment and jury instruction.

## Sufficiency

In assessing the legal sufficiency of the evidence to support a criminal conviction, reviewing courts must consider the evidence in a light most favorable to the jury's verdict.[5] Courts must determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt.[6] Each fact need not point directly and independently to the guilt of a defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.[7] Reviewing courts must give deference to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to

---

[5] *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979).

[6] *Alfaro-Jimenez v. State*, 577 S.W.3d 240, 244 (Tex. Crim. App. 2019). *See Jackson*, 443 U.S. at 314 ("It is axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process.").

[7] *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

draw reasonable inferences from basic facts to ultimate facts.[8]

Importantly, sufficiency review does not rest on how the jury was instructed.[9]  Instead, we review whether the evidence supports the elements of the charged crime.[10]  Those elements are defined by the hypothetically correct jury charge.[11]  The hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.[12]

Finally, in some cases, sufficiency of the evidence also turns on the meaning of the statute under which the defendant has been prosecuted.[13]

---

[8] *Jackson*, 443 U.S. at 318–19.

[9] *Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex. Crim. App. 2018) (citing *Mussachio v. United States*, 136 S.Ct. 709, 715 (2016)); *see also Jackson*, 443 U.S. at 318 ("After *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.").

[10] *Mussachio*, 136 S.Ct. at 715.

[11] *Ramjattansingh*, 548 S.W.3d at 546 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

[12] *Id.*; *see also Alfaro-Jimenez*, 577 S.W.3d at 244 ("'As authorized by the indictment' means the statutory elements of the offense as modified by the charging instrument.").

[13] *Alfaro-Jimenez*, 577 S.W.3d at 244 (citing *Liverman v. State*, 470 S.W.3d 831, 836 (Tex. Crim. App. 2015)).

We consider whether certain conduct actually constitutes an offense under the relevant statute.[14] In other words, we conduct a statutory construction analysis *de novo*.[15]

As discussed above, the State charged Appellant with engaging in organized criminal activity based upon the commission of the "predicate" offense of possession of a controlled substance with intent to deliver. This meant that the State was required to prove both the existence of a criminal combination that planned to engage in criminal activities and the actual commission of at least one listed predicate offense.[16] Here, the State purported to rely upon a predicate offense listed in Section 71.02(a)(5). This section designates applicable predicate offenses as follows:

> (5)  unlawful manufacture, delivery, dispensation, or distribution of a controlled substance or dangerous drug in violation of Subtitle B, Title 3, Occupations Code.[17]

The State's theory was that the offense of possession of a controlled substance with the intent to deliver was contained within the offense of

---

[14] *Id.*

[15] *Id.*

[16] *O'Brien v. State*, 544 S.W.3d 376, 392–93 (Tex. Crim. App. 2018).

[17] TEX. PENAL CODE § 71.02 (a)(5).

delivery of a controlled substance.

We recently held in *Hughitt v. State* that possession of a controlled substance with the intent to deliver is not a valid predicate offense for the greater offense of engaging in organized criminal activity.[18] For the State to rely upon actual delivery of a controlled substance to support the offense of engaging, it must prove more than possession with the intent to deliver.[19] Conversely, for the State to rely upon possession of a controlled substance to support the offense of engaging, it must prove that the possession occurred "through forgery, fraud, misrepresentation, or deception."[20]

As the court of appeals correctly noted, albeit in the context of its unassigned jury charge analysis, the essential elements of the offense of engaging required the State to prove more than possession with the intent to deliver.[21] And the court of appeals was correct that the jury

---

[18] 583 S.W.3d at 631.

[19] *Id.* (holding that the words "manufacture" and "delivery" do not include within their meaning a reference to the separate offense of possession of a controlled substance with the intent to deliver).

[20] TEX. PENAL CODE § 71.02(a)(5); *Hughitt*, 583 S.W.3d at 631 (noting that § 71.02(a)(5) lists possession of a controlled substance "through forgery, fraud, misrepresentation, or deception" as a valid predicate offense for the greater crime of engaging in organized criminal activity).

[21] *Walker*, 2017 WL 1292006, at *2.

charge was erroneous because it failed to include a statutorily designated predicate offense.[22]  Yet, in its sufficiency analysis, the court of appeals measured the sufficiency of the evidence against the erroneous jury charge rather than a hypothetically correct jury charge.[23]  Doing so effectively allowed a conviction on the greater offense in violation of due process because the State did not prove every element of the offense beyond a reasonable doubt.[24]

Measuring the evidence against the hypothetically correct jury charge, "more than some" evidence existed in the record to enable a rational jury to find that Appellant was part of a criminal combination and that Appellant, or a member of the combination, had possessed the alleged controlled substance in the requisite amount.  But the State did not produce evidence establishing the commission of a qualifying predicate offense.  Even though there was evidence that Appellant, or a member of the combination, possessed a controlled substance, the State

---

[22] *Id.* at *3.

[23] *Id.* at *2.

[24] *Jackson*, 443 U.S. at 316 ("*Winship* presupposes as an essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense.").

did not prove that the controlled substance had been possessed "through forgery, fraud, misrepresentation, or deception." Further, even though there was evidence that Appellant, or a member of the combination, possessed a controlled substance with the intent to deliver, there was insufficient evidence to support a conviction for actual delivery of the hydrocodone. We agree with both the State and Appellant that without evidence supporting a qualifying predicate offense authorized by the indictment, Appellant should have been acquitted of the greater offense of engaging in organized criminal activity. We reverse the court of appeals' holding in this regard.

## Reformation

The development of our law regarding reformation to lesser-included offenses is fairly straightforward. In *Bigley v. State*, the defendant was charged with possession of 400 grams or more of methamphetamine.[25] The court of appeals held that the evidence was insufficient to support the conviction for the greater offense, but it reformed the conviction to the lesser-included offense of possession of between 28 and 400 grams of methamphetamine.[26] We held that,

---

[25] 865 S.W.2d 26 (Tex. Crim. App. 1993).

[26] *Id.* at 27.

pursuant to the Rules of Appellate Procedure, the court of appeals had the authority to reform the judgment to reflect a conviction for the lesser-included offense.[27]

In *Collier v. State*, Judge Keasler explained in his concurring opinion that a court of appeals may reform a judgment only to cause it to reflect the true finding of the fact finder.[28]  He noted that we had rejected the idea that reformation was only appropriate to correct clerical errors in *Bigley* even though this interpretation seemed to expand the authority for reformation beyond what had existed under former Article 44.24(b).[29] But he explained that if there were an expansion of authority, that expansion did not authorize a court of appeals to render a judgment that was completely unavailable at the time of trial.[30]  Instead, a court of appeals may only reform a judgment to reflect the judgment that the trial court was capable of rendering in light of the jury instructions at trial.[31] We later recognized that Judge Keasler's concurring opinion set out the

---

[27] *Id.* at 27–28.

[28] 999 S.W.2d 779, 784 (Tex. Crim. App. 1999) (Keasler, J., concurring).

[29] *Id.*

[30] *Id.*

[31] *Id.*

proper rationale for allowing an appellate court to reform a judgment after conducting a sufficiency review.[32] But in *Thornton v. State,* we abandoned the requirement that jury reformation be limited by the jury instructions at trial.[33] We rejected the portion of *Collier* that tied reformation to a request for a lesser-included offense instruction when the evidence was insufficient to support the greater offense.[34]

Instead, we held that a court of appeals may reform a judgment after an acquittal of a greater-inclusive offense to a lesser-included offense if two conditions are met: 1) the jury necessarily found every element necessary to convict the appellant of the lesser-included offense when it convicted the appellant of the greater-inclusive offense, and 2) there is sufficient evidence to support a conviction for that offense.[35] These requirements satisfy the due process protections inherent to legal sufficiency review by preventing arbitrary deprivation of liberty based upon charges never filed while also ensuring that the State carries its

---

[32] *Haynes v. State*, 273 S.W.3d 183, 187 (Tex. Crim. App. 2008); *see also Bowen v. State*, 374 S.W.3d 427, 433 (Tex. Crim. App. 2012) (Price, J., dissenting) ("In *Haynes v. State*, a solid majority of the Court recognized Judge Keasler's concurring opinion in *Collier v. State*, as the governing *ratio decidendi*.").

[33] 425 S.W.3d 289, 297 (Tex. Crim. App. 2014).

[34] *Id.*

[35] *Id.* at 299–300.

burden to prove each element of the charged offense beyond a reasonable doubt.[36] Finally, it also serves to give effect to the jury's verdict by tying reformation to what the jury necessarily found when it reached that verdict.[37]

But what about when the "greater inclusive" offense is a "non-existent" offense? This question gets at the heart of the problem in this case, namely whether reformation is proper when the indictment "fails to allege a crime within the scope of the engaging in organized criminal activity statute."[38] Can a court reform to a lesser offense when there is no greater one?

The confusion in this case seems to echo from our "void judgment" jurisprudence. Prior to 1985, a defect in the substance of an indictment was said to be "fundamental error" because such a defect failed to confer

---

[36] *See Thompson v. City of Louisville*, 362 U.S. 199, 206 (1960) ("Just as '[c]onviction upon a charge not made would be sheer denial of due process,' so is it a violation of due process to convict and punish a man without evidence of his guilt."); *In re Winship,* 397 U.S. 358, 363–64 (1970) (the standard of proof beyond a reasonable doubt "plays a vital role in the American scheme of criminal procedure" because it operates to give "concrete substance" to the presumption of innocence to ensure against unjust convictions, and to reduce the risk of factual error in a criminal proceeding); *Jackson*, 443 U.S. at 309 (the constitutional standard recognized in *Winship* requires that every element of the offense be proved beyond a reasonable doubt).

[37] *See Collier,* 999 S.W.2d at 784 (Keasler, J., concurring). *See, e.g., United States v. Haymond*, 139 S.Ct. 2369, 2376 (2019) (plurality op.) (noting that "A judge's authority to issue a sentence derives from, and is limited by, the jury's factual findings of criminal conduct.").

[38] *Walker*, 2017 WL 1292006, at *2.

jurisdiction upon the trial court, and any conviction had upon that instrument was therefore void.[39] The failure to allege an element of an offense in the charging instrument was the type of substantive defect that rendered conviction upon such an indictment void.[40]

But in 1985, Article V, § 12 was amended so that the mere presentment of the indictment or information, rather than the substance of the indictment, confers jurisdiction on the trial court.[41] Further, Article 1.14(b) was amended to require an objection to any substantive defects in the indictment prior to trial or else the complaint is forfeited.[42] Based upon these amendments, we concluded that the requisites of an indictment are not jurisdictional and stem from statutory law alone.[43]

We have recognized as a legal principle that an indictment that fails to allege "the commission of an offense" is not an indictment under the Texas Constitution.[44] And absent an indictment or a valid waiver, a

---

[39] *Studer v. State*, 799 S.W.2d 263, 267 (Tex. Crim. App. 1990).

[40] *Id.*

[41] TEX. CONST. art. V, § 12; *see also Studer*, 799 S.W.2d at 265, 268.

[42] TEX. CODE CRIM. PROC. art. 1.14(b); *see also Studer*, 799 S.W.2d at 265, 268.

[43] *Studer*, 799 S.W.2d at 272.

[44] *Duron v. State*, 956 S.W.2d 547, 550–51 (Tex. Crim. App. 1997) (holding that an "offense" is charged if the written instrument "accuses someone of a crime with enough clarity and specificity to identify the penal statute under which the State intends to prosecute"). If the written instrument purporting to be an indictment does not in fact

district court does not have jurisdiction over a case.[45] Presiding Judge Keller properly demonstrated the standard for determining if an indictment alleges "the commission of an offense" in her concurring opinion in *Teal v. State*.

> *Duron*'s standard for determining when an "offense" is alleged can be understood through the following example. Suppose the purported indictment alleged only the name of the perpetrator and a culpable mental state: *e.g.* "John Smith intentionally." Any number of criminal offenses could contain those allegations. Under *Duron*, this simply would not be enough information to allege an offense.[46]

Had the indictment in this case been as deficient as the one envisioned by Presiding Judge Keller then we might characterize the engaging offense as the State does, as a "non-existent" offense.

But the indictment in this case did allege "the commission of an offense." It at least alleged the commission of the offense of possession of a controlled substance with the intent to deliver.[47] The lack of a valid

---

qualify as an "indictment," then the defendant is exempted from the usual requirement that he object to defects in the indictment before the date of trial. *Id.* at 551.

[45] *Teal v. State*, 230 S.W.3d 172, 174–75 (Tex. Crim. App. 2007). This is what Appellant argued to the court of appeals when asked for supplemental briefing on the issue of whether the offense of possession with intent to deliver qualifies as a predicate offense for the offense of engaging in organized criminal activity by commission.

[46] *Id.* at 183 (Keller, P.J., concurring). Presiding Judge Keller went on to explain that the indictment at issue in *Teal* was an indictment under the Texas Constitution because it at least alleged a misdemeanor offense. *Id.*

[47] *See*, *e.g., Teal*, 238 S.W.3d at 183 (Keller, P.J., concurring); *see also O'Brien*, 544 S.W.3d at 393 ("When the State charges a defendant with engaging by commission, it must

predicate offense in this case amounted to a substantive defect in the charging instrument, not the lack of an indictment altogether. Appellant did not object to this defect prior to trial, so she cannot complain about it now. And while this substantive defect may have impermissibly lowered the State's burden at trial with regard to the greater offense, conviction for the offense of possession with intent to deliver was still authorized by the indictment.

## Remand

Appellant argues that even if we determine that the court of appeals can reform the judgment in this case we should nevertheless give the court of appeals the opportunity to consider whether it satisfies the necessary conditions for reformation. Appellant asks us to dispose of the case the way we did initially did in *Rabb v. State*.[48] There, the defendant had been convicted of tampering with evidence, and the Court held that the evidence was insufficient to support the conviction.[49] We remanded the case because the court of appeals did not have the benefit of our decision in *Thornton* so that the court of appeals, which had not

show at least one completed offense.").

[48] *Rabb v. State*, 434 S.W.3d 613 (Tex. Crim. App. 2014).

[49] *Id.* at 618.

conducted a reformation analysis, could do so.[50]    We agree with Appellant.

Though the court of appeals did have the benefit of our decision in *Thornton*, we had not previously decided the issue before us in this case. Further, the court of appeals never conducted a reformation analysis because it found the evidence to be legally sufficient to support the offense of engaging in organize criminal activity.  Having determined that reformation is proper when the "lesser included" offense is authorized by the indictment, the proper course of action is to remand the case for the court of appeals to consider 1) whether the jury necessarily found all the elements of that offense beyond a reasonable doubt, and 2) whether the evidence was legally sufficient to support that offense.

## Conclusion

We agree with both Appellant and the State that the evidence was legally insufficient to support the conviction for engaging in organized criminal activity.  Consequently, we reverse the court of appeals decision in this regard.  We further hold that reformation to possession of a controlled substance with the intent to deliver is authorized by the

---

[50] *Id.*

indictment.  We remand the case to the court of appeals to determine if the remaining conditions necessary for reformation are met.

Filed: February 26, 2020

Publish